## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00200-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     **SHAWN SHIELDS,**

    Defendant.

---

### GOVERNMENT'S SENTENCING STATEMENT

---

The United States of America, by and through Robert C. Troyer, United States Attorney, and undersigned counsel, submits the following Sentencing Statement pursuant to D.C.Colo.LCrR 32.1(a)(1). On February 20, 2018, trial began for the single-count alleged in the Indictment. On February 22, 2018, the jury returned a verdict of guilty as to Count One: Possessing Contraband in Prison, in violation of 18 U.S.C. § 1791(a)(2).

### I.    STATUTORY PENALTIES

The maximum penalties for the violation for which Defendant has been convicted are as follows: not more than five years in prison, not more than a $250,000 fine, or both fine and imprisonment. Pursuant to 18 U.S.C. § 1791(c), any sentence imposed in this case must be imposed consecutive to Defendant's current sentence. The offense also carries the penalty of not more than three years supervised release and $100 Special Assessment fee. A violation of any conditions of supervised release may result in a separate prison sentence and additional supervision.

## II.   FACTUAL BASIS

This case was tried to a jury.   As a result, the Government incorporates herein by reference the entire transcript of the trial.   However, for purposes of efficiency, the Government summarizes the facts established during the trial as follows:

On March 18, 2015, Defendant was incarcerated at the United States Penitentiary – Administrative Maximum (ADX) in Florence, Colorado. Specifically, Defendant was housed in the J-Unit (Joker Unit), a step-down unit at the ADX.[1]

In the morning on March 18, 2015, Defendant and another inmate, Vincent Basciano, were working out on the lower tier of Joker Unit near the stairs during their indoor recreation period.   Another inmate, Donald Heisler, was standing near them, but speaking to another inmate through his closed cell door. Correctional Officer Joseph Hill heard and inmate Heisler yelling "come here and I'll break your jaw" to someone. Officer Hill then observed inmate Heisler lunge up the stairs after Defendant, who was running up the stairs in the housing unit, fleeing from inmate Heisler.   Inmate Basciano intervened and stopped the incident by holding back inmate Heisler.   Defendant continued quickly walking to his cell where he knelt down and appeared to retrieve an item from a rolled up towel.   He then discretely tucked the item into his waistband, and continued to pace the upper tier of the housing unit.

After a few minutes, Defendant and inmate Heisler engaged in a prolonged and casual conversation on the upper level of the housing unit.   The housing unit was shortly thereafter locked down and all the inmates return to their individual cells where they are housed alone.

Later that morning, investigators from the Special Investigative Services Department,

---

[1] Joker Unit, was the only step-down unit at ADX. It is the only unit where inmates interact with one another and have physical contact outside of their cells for set periods in the day.

including Lt. Amy Kelley, Lt. Charles Alvarez, and Jaime Munoz, arrived in Joker Unit to conduct an investigation. As part of that investigation, Lt. Alvarez and Mr. Munoz escorted Defendant to the Special Housing Unit, another housing unit at the ADX. The Special Housing Unit is used to temporarily house inmates that are under investigation. Located inside the Special Housing Unit is a whole body scanner machine, called a SecurPASS machine. This machine is able to detect contraband that is concealed by inmates within their clothes and within their bodies.

As part of the routine search procedures for inmates entering the Special Housing Unit, correctional officer Terral Anderson escorted Defendant, who had on handcuffs, onto the SecurPASS machine to be scanned. The first few scans showed an object within the lower abdominal area of Defendant's body. Officer Anderson questioned Defendant about the item, but Defendant denied that he was concealing anything. Officer Anderson asked Lt. Alvarez to come into the SecurPASS room and observe the unknown object. Lt. Alvarez, after viewing the object, ordered Defendant to be scanned again, this time with Defendant's restrained hands raised up slightly. This image again showed the same object in the same place.

Lt. Alvarez questioned Defendant about the possibility of a back surgery involving screws. Defendant said that he had a back surgery in the past. Lt. Alvarez lifted up Defendant's shirt to look at his lower back area, but could see no indication, like scarring, of a back surgery. Lt. Alvarez directed Defendant to relinquish the object he was concealing. Bargaining with Lt. Alvarez, Defendant said, "If you show it to me on the screen, I will give it up to you." Lt. Alvarez permitted Defendant to view the computer screen. Upon viewing the image, Defendant said, "Okay you got me. Damn technology nowadays is a bitch. Just escort

me to a cell and I will give it to you.   That's my word plus I don't want Osagie's fat fingers in my ass."

Defendant was then escorted to interview room 142, adjacent to the SecurPASS machine room.   Lt. Alvarez and Mr. Munoz observed Defendant move to the back corner of the room, reach his hand down his pants, and retrieve an unknown object from his rectum.   The object, which was covered in blood and feces, was deposited in a plastic bag by Defendant and Mr. Munoz secured the object.

Mr. Munoz, with the assistance of a photographer, unwrapped and photographed the unknown object.   The outer plastic wrapper was removed, revealing an inner wrapping made from toilet paper.   Once the toilet paper was removed, it became clear that the unknown object was actually a homemade weapon, commonly referred to as a shank.   There was a larger weapon, a smaller weapon that resembled a razor blade, and a cardboard-like sheath.   Both of the shanks were made of metal and sharpened to a point at one end.   The larger weapon measured 4.5-inches and the smaller weapon measured 1.5-inches.   The sheath was made to house each shank neatly.   Both shanks, along with the sheath, were secured in an evidence locker at the ADX.

### III. SENTENCING COMPUTATION

  A. The base offense level is 13.   *See* U.S.S.G. § 2P1.2(a)(2) (if the object was a weapon, other than a firearm or destructive device, or any object that might be used as a weapon). No other enhancements apply.

  B. Criminal History: Defendant has an extensive criminal history, including unlawfully carrying a concealed weapon, second degree burglary of a dwelling, third degree assault, second degree forgery, criminal conspiracy – aggravated robbery, and

      possession of contraband in the first degree. However, due to the age or natures of these cases, many may not apply for purposes of calculating his Criminal History Category.

C. The Government estimates that Defendant has a Criminal History Category of VI.

    a. Defendant receives three points for a sentence imposed in a 1996 conviction from a Colorado state court case for second degree assault with a deadly weapon – serious injury. The total sentence was 16 years.

    b. Defendant receives three points for a 1999 conviction and sentence from a Colorado state court case for attempted first degree possession of contraband – dangerous instrument. The total sentence was two years, consecutive to any other sentence.

    c. Defendant receives three points for a 2001 conviction and sentence from a Colorado state court case for first degree possession of contraband – dangerous instrument. The total sentence was eight years, consecutive to any other sentence.

    d. Defendant receives three points for a 2006 conviction and sentence from the United States District Court for the District of Colorado for conspiracy to retaliate against a witness and retaliation against a witness (aiding and abetting). The total sentence was 120 months.

    e. Defendant receives three points for a 2006 conviction and sentence from a Colorado state court case for first degree introduction of contraband. The total sentence was four years.

    f. Defendant receives three points for a 2010 conviction and sentence from a

        Colorado state court case for second degree burglary of a dwelling and second degree murder.   The total sentence was eight years and 32 years respectively.

   g. Under U.S.S.G. § 4A1.1(d), two points are added because Defendant committed the instant offense while under another criminal justice sentence.

D. The Guideline range of a total offense level of 13 and a Criminal History Category of VI results in a sentencing range of 33-41 months.

E. Pursuant to U.S.S.G. § 5E1.2, assuming an estimated total offense level of 13, the fine range for this offense is $5,500 to $55,000, plus applicable interest and penalties.

F. The sentence for this offense shall be imposed to run consecutively to the undischarged term of imprisonment Defendant was serving when he committed this offense.   *See* U.S.S.G. § 5G1.3(a)

Dated this 19th day of March 2018.

                      Respectfully Submitted,

                      ROBERT C. TROYER
                      United States Attorney

                      *s/Clay C. Cook*
                      CLAY C. COOK
                      Special Assistant U.S. Attorney
                      *s/Valeria N. Spencer*
                      VALERIA N. SPENCER
                      Assistant U.S. Attorney
                      U.S. Attorney's Office
                      1801 California Street, Suite 1600
                      Denver, CO 80202
                      Telephone: 303-454-0100
                      Fax:   303-454-0403
                      E-mail:   Clay.Cook@usdoj.gov
                      E-mail:   Valeria.Spencer@usdoj.gov
                      Attorneys for Government

## **CERTIFICATE OF SERVICE**

       I hereby certify that on this 19th day of March 2018, I electronically filed the foregoing **GOVERNMENT'S SENTENCING STATEMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Abraham Hutt
abe@rklawpc.com
Attorney for Defendant

 

*s/Valeria N. Spencer*
VALERIA N. SPENCER
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:   303-454-0403
E-mail:   Valeria.Spencer@usdoj.gov