IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00200-REB

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

1. **SHAWN SHIELDS,**

    Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT (DOC. 130)**

---

The United States of America, by and through Robert C. Troyer, United States Attorney for the District of Colorado, and undersigned counsel, hereby submits the following response to Defendant's Objections to the Presentence Investigation Report (PSR, Doc. 130).

With respect to the PSR, Defendant objects to the factual recitations of his offense conduct (PSR paragraphs 6-7) and the factual basis of many of his prior convictions (PSR paragraphs 35-41). *See* Doc. 130 at 1-2. Second, Defendant objects to numerous paragraphs pertaining to the United States Sentencing Guidelines (Guidelines) calculations. *Id.* at 2-3. Specifically, he contends he should receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, Application Note 1 (PSR paragraphs 16-17), he objects to the additional two points to his criminal history pursuant to U.S.S.G. § 4A1.1(d) (PSR paragraphs 45-48), and he objects to his overall Guidelines calculation (PSR paragraphs 75-76). *See* Doc. 130 at 2-3. The Court should overrule these objections for the reasons set forth below.

## I.     FACTUAL OBJECTIONS

### A.     Offense Conduct Description

Defendant contends that the PSR's (paragraphs 6-7) "description of the offense conduct . . . inadequately describes the nature of the threat to him described at trial." Doc. 130 at 1. Specifically, the PSR "fails to describe the testimony of Donald Heisler detailing his threat to kill Mr. Shields, the weapon Heisler possessed, his effort to lull Mr. Shields into a false sense of security after chasing him up the stairs so as to make a later effort to carry out the threat more effective, and his threats stated to Mr. Shields through his cell door after Mr. Shields had returned to his cell and Mr. Heisler had not." *Id.* at 1-2.

The information contained in the PSR for the offense conduct was taken directly from the Government's Sentencing Statement. *See* Doc. 126 at ¶ 4. The Court is well aware of Mr. Heisler's testimony at trial, including the government's cross examination which deflated many of the threats identified above. In particular, while defense counsel, in his opening statement, said that Mr. Heisler threatened to kill Defendant as they were locking down the housing unit, Mr. Heisler testified that he told Defendant to pack his belongings and apologized for getting him involved. He made no overt threat to Defendant at that time, despite defense counsel's promise during his opening statement. Likewise, while Mr. Heisler testified that he picked up a ten-inch ice-pick weapon that was casually placed on a communal table, there was no evidence of this weapon at any point in time on the video. Finally, the video clearly showed Defendant and Mr. Heisler engaging in a casual conversation in the housing unit for many minutes following the initial incident where Mr. Heisler yelled at Defendant that he would break his jaw.

While the government contends that the offense conduct factual summary is correct in the PSR, the Court may determine whether the claimed threats referenced during Defendant's opening

statement – which is not evidence – were substantiated through Mr. Heisler's testimony and the other pieces of evidence adduced at trial.

> A. **Criminal History Descriptions**

Defendant objects that PSR paragraphs 35-41 are "inaccurate and insufficiently documented to warrant acceptance by the court or being given any weight by the court." Doc. 130 at 2.  He "disputes the accuracy of the factual descriptions in each of the paragraphs 35-41 and asserts that without being afforded the opportunity to review the source of the information neither he nor counsel can effectively answer, defend, or correction the assertions made therein."  *Id.*

In making these objections, Defendant does not specify any actual objection to any particular facts in paragraphs 35-41 in the PSR.   Instead, he asserts a blanket objection to all information, including the crimes of conviction, case information, case summary, and sentences received.

In *United States v. Shields*, 219 Fed. Appx. 808 (10th Cir. Mar. 15, 2007), the Tenth Circuit outlined the offense conduct that comports to the facts in paragraph 38 of the PSR:

> On May 18, 2005, Jessie Cluff, a Colorado inmate, testified as a government witness in the federal prosecution of two fellow Colorado inmates, Carl Pursley and Wendell Wardell, for conspiring to file fraudulent tax returns while in prison. Mr. Shields and another Colorado inmate, Vernon Templeman, were called as defense witnesses, although they apparently knew nothing about the claimed offenses. On May 23 all five inmates were in holding cells at the federal district court in Denver. Mr. Shields was in the same cell as Cluff and Templeman. Pursley and Wardell were in a nearby cell. A video surveillance camera recorded Mr. Shields and Templeman attacking Cluff.
>
> At Mr. Shields's trial in this case, Cluff testified that while in the cell with Mr. Shields before the assault, he heard shouted conversation between Pursley and Mr. Shields. According to Cluff, Mr. Shields thanked Pursley for getting him transferred temporarily from state prison to the custody of the U.S. Marshals, Pursley responded that "there was a reason why [Mr. Shields] was down there," and Mr. Shields replied that "it would be easier than he thought." In addition, Cluff said that he saw Mr. Shields and Templeman

> whispering to one another; that Templeman also engaged in shouted conversation with Pursley; and that Pursley yelled that Harry Hall, a fourth prisoner in the cell with Mr. Shields, Templeman, and Cluff, "was all right, he was cool." Cluff testified that Mr. Shields then "told me that my worst nightmare had come true," "[t]hat he was friends with Carl Pursley," and that "the whole purpose of his trip was to get me."
>
> Another witness was a prisoner who had been in the same holding cell as Wardell and Pursley. He testified that he had heard conversations between the holding cells and that he also heard either Wardell or Pursley refer to Cluff and say that Mr. Shields "will take care of him."

*Id.* at 809-810.   *See also United States v. Wardell*, 591 F.3d 1279, 1284 (10th Cir. 2009) (Shawn Shields and Vernon Templeton physically carried out the assault on Jessie Cluff while he was in a holding cell at the federal courthouse in Denver, Colorado); *United States v. Pursley*, 577 F.3d 1204, 1211 (10th Cir. 2009) (same); *United Stated v. Wardell*, 581 Fed. Appx. 726 (10th Cir. Oct. 31, 2014) (Shields and another inmate "beat Mr. Cluff while the three were in the same holding cell in the courthouse").

Without knowing the exact facts to which Defendant objects in paragraphs 35-41, it is impossible for the government to provide a cogent and meaningful response.   Defendant's general objections do not provide specific enough details that would allow this Court to make any findings or order modifications to the PSR.   Moreover, the objections are so general and vague, they provide no basis for this court to question to accuracy of the PSR.   *See United States v. Swearingen*, 506 Fed. Appx. 804, 806 (10th Cir. Jan. 2, 2013) (the district court denied the defendant's general objections to the PSR, finding that they were too "general and vague" to provide a basis to question the accuracy of the PSR).

It may be presumed that the factual information contained in the criminal history section of the PSR was derived, at least in part, from the prior PSR completed in *United States v. Shawn Shields*, Case No. 05-cr-00342-REB (D. Colo.).   At that time, Defendant had the opportunity to

object to the factual narrative in the PSR and have those objections heard and ruled upon by the Court.

II.     UNITED STATES SENTENCING GUIDELINES

   A.     **Acceptance of Responsibility**

Defendant argues that he should receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). *See* Doc. 130 at 2. He contends that "Application Note 1 . . . is applicable to Mr. Shields because only by taking the case to trial could he properly assert and preserve the issue that the jury should be instructed on the defense of necessity. His pre-trial statements admitted his conduct and his pre-trial conduct assisted law enforcement officers to recover the evidence used to convict him." *Id.*

Defendant, without providing any case law to support his objection, relies upon U.S.S.G. § 3E1.1, Application Note 1 as the basis for his contention that Defendant is entitled to a two-level reduction in his offense conduct for acceptance of responsibility. In pertinent part, "whether a defendant qualifies under" U.S.S.G. § 3E1.1(a), appropriate considerations include "voluntary termination or withdrawal from criminal conduct" and "voluntary surrender to authorities promptly after commission of the offense," among other factors. Likewise, U.S.S.G. § 3E1.1, Application Note 2 provides that the two-level reduction "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."

In *United States v. Herron*, 432 F.3d 1127 (10th Cir. 2005), the defendant argued that he was entitled to a downward adjustment for acceptance of responsibility, despite being convicted of being a felon in possession after a jury trial. *Id.* at 1138. He claimed that he "admitted his 'factual guilt' in a pretrial statement" to a law enforcement officer and again "at his parole

revocation hearing." *Id.*   The Tenth Circuit noted that "conviction at trial does not automatically prevent him from seeking the adjustment" such as when a defendant "goes to trial to assert and preserve issues that do not relate to factual guilt[.]" *Id.*   During the trial, the defendant only stipulated to one of three elements to prove his guilt. *Id.*   As such, at trial, "the prosecution called witnesses to establish these facts, and defense counsel tested their testimony on cross-examination." *Id.* at 1139.   Finally, the defendant "never claimed that the trial was held only to preserve issues unrelated to factual guilty so that those issues could be appealed. Accordingly, the [district] court determined that the downward adjustment was not warranted" and the Tenth Circuit upheld those findings. *Id.*

In *United States v. Bell*, 411 F.3d 960, 963 (8th Cir. 2005), the defendant's claims "that he did not challenge his factual guilt is contradicted by his trial motions and strategy."   For example, the defendant "made two motions for judgment of acquittal based on the insufficiency of the evidence" and he "also cross-examined all five of the government's witnesses[.]" *Id.* at 963-964. The Eighth Circuit noted that "[w]hile this strategy was consistent with [the defendant's] right of confrontation, it was inconsistent with relieving the government of its burden of proof at trial. Such tactics were squarely aimed at challenging the government's evidence against the defendant. In addition, if [the defendant's] only purpose was to assert the justification defense, he could have pleaded guilty after the District Court disallowed the defense.   Instead, [the defendant] took his chances and let the case go to the jury." *Id.* at 964.   The Guidelines "unequivocally state that the acceptance-of-responsibility reduction is not intended to apply where, as here, the defendant has put the government to its burden of proof at trial." *Id.*   "Were we to consider [the defendant's]

pre-trial conduct, however, we note that [the defendant] lied to police about his previous felony conviction and only admitted the conviction after the police learned about it through a criminal background check." *Id.*

In summary, the defendant "denied his prior felony arrest, he challenged the evidence against him, he insisted his possession of the gun was justified, and he showed no remorse until after his conviction. We therefore cannot say the District Court's decision to deny [the defendant] a sentencing reduction for acceptance of responsibility was clearly erroneous." *Id. See also Isabel v. United States*, 980 F.2d 60, 65 (1st Cir. 1992) (acknowledging that one of these "rare" circumstances may be present where a defendant admits his conduct and denies only that it constitutes money laundering under the relevant statute); *United States v. Peery*, 977 F.2d 1230, 1234 (8th Cir. 1992) (affirming denial of acceptance of responsibility deduction because trial focused on factual guilt as well as applicability of the statute).

As in *Herron* and *Bell*, Defendant put the government to its full burden of proof at trial, contesting each element of the underlying offense. This strategy began well before trial as Defendant filed multiple pre-trial motions contesting the admissibility of his statements to law enforcement personnel about the weapons he was possessing (Doc. 35), motion for additional discovery (Doc. 34), motion to dismiss for selective prosecution (Doc. 77), motion to dismiss for violating Federal Bureau of Prisons rules (Doc. 78), and various competing and non-stipulated jury instructions that challenged the underlying elements of the crime (Docs. 98-99). During the trial, Defendant did not stipulate to any of the government's twenty-five admitted exhibits (Doc. 120). In fact, Defendant did not stipulate even to the fact that he was an inmate at the time of the offense, an element of the crime. His attorneys cross-examined each of the government's five witnesses to test their credibility and truthfulness. Exactly like *Bell*, if Defendant's "only purpose was to

7

assert the [necessity] defense, he could have pleaded guilty after the District Court disallowed the defense.   Instead, [Defendant] took his chances and let the case go to the jury."   411 F.3d at 964. As stated by the Tenth Circuit in *Herron*, Defendant has – until his recent PSR objections – "never claimed that the trial was held only to preserve issues unrelated to factual guilt so that those issues could be appealed."   432 F.3d at 1139.

Overruling this objection is further supported in light of Defendant's conduct on the date of the offense.   He failed to relinquish the weapons on his own terms voluntarily until he was confronted outright with the evidence of the SecurPASS machine images that clearly showed the shanks secreted within his own rectum.   He lied to investigating officials about possessing the weapons and only came forward once he knew he had no other options and the weapons were going to be discovered anyway.   He had every opportunity to let law enforcement personnel know that he was in possession of weapons, but he instead chose to be scanned on the SecurPASS machine multiple times before finally admitting that the weapons were concealed in his own rectum.   He did not accept responsibility at this point, but resigned himself to the fact that he had been caught and had no other choices left, finally admitting, "Okay you got me.   Damn technology nowadays is a bitch.   Just escort me to a cell and I will give it to you.   That's my word plus I don't want Osagie's fat fingers in my ass."

Defendant's actions both before and during trial should not be countenanced as accepting responsibility for his own actions.   He lied to officials about his culpability during the offense conduct, challenged the sufficiency of the government's evidence in multiple pre-trial motions, and, during trial, challenged each of the elements of the offense, cross-examined each government witness, and failed to stipulate to any of the government's exhibits.   Defendant put the

8

government to its full burden, his right under the law. However, he cannot now also claim to have accepted responsibility in order to receive a benefit of a two-level reduction in his total offense level.

Therefore, because Defendant failed to accept responsibility pursuant to U.S.S.G. § 3E1.1(a), the total offense level reflected in the PSR is accurate.

### A. U.S.S.G. § 2P1.2 Offenses and Double Counting

Defendant argues that U.S.S.G. § 4A1.1(d) "adds points when the present offense was committed while under a sentence. Being under such a sentence is an essential element of the crime for which he was convicted and this factor is therefore accounted for in the base level of the offense" and is therefore "inapplicable to Mr. Shields as duplicative of the conviction itself." Doc. 130 at 2-3.

This argument incorrectly presumes that the interplay between U.S.S.G. § 2P1.2, the Guidelines provision applicable to 18 U.S.C. § 1791(a)(2) offenses, and U.S.S.G. § 4A1.1(d), amounts to an impermissible double counting. Furthermore, Defendant fails to provide any case law to support his contention that the implementation of both U.S.S.G. §§ 2P1.2 and 4A1.1(d) is improper.

The Guidelines make clear that cumulative application of multiple adjustments is contemplated in the implementation and calculation under the Guidelines.

> <u>Cumulative Application of Multiple Adjustments from Multiple Guidelines</u>. – Absent an instruction to the contrary, enhancements under Chapter Two, adjustments under Chapter Three, and determinations under Chapter Four are to be applied cumulatively. In some cases, such enhancements, adjustments, and determinations may be triggered by the same conduct. For example, shooting a police officer during the commission of a robbery may warrant an injury enhancement under § 2B3.1(b)(3) and an official victim adjustment under § 3A1.2, even though the enhancement and the adjustment both are triggered by the shooting of the officer.

U.S.S.G. § 1B1.1, comm. app. n. 4(B).

This example clearly envisions enhancement of a defendant's offense level by applying guidelines from different chapters of the guidelines manual even though the adjustments for each may be triggered by the same event or conduct. *See United States v. Rucker*, 178 F.3d 1369, 1372 (10th Cir. 1999) ("When a defendant's sentence is enhanced multiple times for a seemingly single act, impermissible double counting occurs only if the enhancements necessarily overlap, are indistinct, *and* serve identical purposes.") (emphasis in original)).

In the case of a sentence calculated pursuant to U.S.S.G. § 2P1.2, there is no express prohibition to adding two criminal history points to a criminal history calculation pursuant to U.S.S.G. § 4A1.1(d). Further, the United States Sentencing Commission did not intend for the offense level calculation under U.S.S.G. § 2P1.2 to account for a person's incarceration as that section equally applies to incarcerated and non-incarcerated individuals. The offense level reflects the seriousness of the offense adjusted for relevant conduct and the criminal history score reflects an assessment of the individual defendant and the need to increase his sentence incrementally to deter him from further criminal conduct. *See United States v. Alessandroni*, 982 F.2d 419, 421 (10th Cir. 1992) ("the structure of the Sentencing Guidelines suggests that the criminal history category is to be determined independently of the offense level and without regard to the nature of the crime for which the defendant is currently being sentenced.") (internal citations omitted)).

The Tenth Circuit[1] has addressed the issue of double counting in the context of an inmate escape case under U.S.S.G. § 2P1.1. *See United States v. Goldbaum*, 879 F.2d 811 (10th Cir. 1989). In *Goldbaum*, the defendant pleaded guilty to unlawful escape from custody in violation of 18 U.S.C. § 751(a) and he was sentenced to 24 months' imprisonment. *Id.* at 812. The defendant argued that the district court erred in applying the Guidelines, particularly determining the criminal history category. *Id.* The district court judge "calculated the criminal history level and added three points to that category pursuant to Guidelines §§ 4A1.1(d) and (e)." *Goldbaum*, 879 F.2d at 812.

The defendant argued that "the policy behind the enhancement sections in chapter 4 of the Guidelines is to punish a defendant more severely for offenses committed while in custody and for offenses committed close in time to previous crimes. He asserts that because custody is a necessary element to the crime of escape it cannot also be considered a factor making the crime more egregious and thereby warranting enhancement of the punishment." *Id.* at 813.

In rejecting the defendant's argument, the Tenth Circuit noted that "[t]he structure of the Sentencing Guidelines suggests that the criminal history category is to be determined without regard to the nature of the crime for which the defendant is currently being sentenced." *Id.* (citing *United States v. Reyes-Ruiz,* 868 F.2d 698, 700 (5th Cir. 1989)). Further, "there is not a complete overlap . . . between the escape offenses covered by Guidelines § 2P1.1 and the escape offenses which would be enhanced by the application of Guidelines §§ 4A1.1(d) and (e)" as § 2P1.1 "is broad in application and applies to those who escape from a high security prison" and "to

---

[1] The Third and Fifth Circuits have reached conclusions similar to that of the Tenth Circuit. *See United States v. Vickers*, 891 F.2d 86 (5th Cir. 1989); *United States v. Medeiros*, 884 F.2d 75 (3d Cir. 1989); *United States v. Ofchinick*, 877 F.2d 251 (3d Cir. 1989).

defendants who aid and assist an escape in violation of 18 U.S.C. § 752 even if they were not in custody at the time of the offense and have no prior criminal record." *Id.* at 814.

As the Third Circuit stated in *Ofchinick*, and quoted in *Goldbaum*, "Inasmuch as persons not in custody may be sentenced under the guideline, it is inconceivable that the Sentencing Commission intended the establishment of a base offense level therein to impact on the computation of the criminal history category. A contrary ruling would mean that an inmate who escaped, whose only criminal history was the offense for which he was in custody when he escaped, would be subject to the same sentencing range as a person who had no criminal history and assisted an inmate to escape. We refuse to construe the guidelines to reach such an absurd result." *Ofchinick*, 877 F.2d at 251.

In *Goldbaum*, while U.S.S.G. § 2P1.1 was evaluated, rather than U.S.S.G. § 2P1.2, which governs Defendant's Guidelines offense level calculation in the instant case, the argument raised in that case is identical to the argument Defendant raises herein and should be rejected for the same reasons.

Here, the Guidelines at issue (U.S.S.G. §§ 2P1.2 and 4A1.1(d)) are from different chapters of the Sentencing Guidelines Manual and address the two distinct facets of guidelines sentencing, offense level and criminal history category, and may be applied cumulatively. *See* U.S.S.G. § 1B1.1, comm. app. n. 4(B).

Finally, there is no issue with impermissible double counting here because Defendant's status as an inmate – like the defendant in *Goldbaum* – was *not* accounted for in the calculation of his total offense level. This is because U.S.S.G. § 2P1.2 applies the same offense level to both inmates who possess contraband in prison and non-inmates who provide contraband to prisoners. Instead, the Sentencing Commission intended U.S.S.G. § 4A1.1(d) to account for a defendant's

incarceration status. The broad application of U.S.S.G. § 2P1.2 to both inmates and non-inmates necessitates a finding that the Sentencing Commission intended to account for a defendant's incarceration status through the calculation of his criminal history. *See Goldbaum*, 879 F.2d at 814 ("Because of the broad application of Guideline § 2P1.1 the Sentencing Commission may well have intended to differentiate the sentences for the various § 2P1.1 offenses by using the criminal history category in chapter 4[.]"). As stated in *Goldbaum* and *Ofchinick*, to construe U.S.S.G. §§ 2P1.2 and 4A1.1(d) otherwise would lead to an "absurd result."

Therefore, the assessment of two additional criminal history points[2] pursuant to U.S.S.G. § 4A1.1(d) does not amount to an impermissible duplication of punishment, and this objection should be overruled.

### C.   Final Guidelines Calculation

Because Defendant's objections to the calculation of his total offense level and criminal history should be overruled, the final Guidelines calculation reflected in the PSR (Doc. 126 at ¶ 75) is correct. Finally, Defendant objects to PSR paragraph 76, but that paragraph merely recites the statutory requirement that any sentence imposed under 18 U.S.C. § 1791(b) must be consecutive to the sentence currently being served by the inmate. Defendant provides no justification to dispute that statutory provision and, as such, his objection should be overruled.

---

[2] It is worth noting that Defendant does not object to the PSR finding that he has 21 other criminal history points. *See* Doc. 126 at ¶ 45. Even if Defendant did not receive the additional two criminal history points pursuant to U.S.S.G. § 4A1.1(d), he would still be in criminal history category VI in accordance with the Guidelines sentencing table.

## CONCLUSION

WHEREFORE the government respectfully requests that the Court overrule Defendant's objections as indicated above.

Dated this 12th day of June, 2018.

                                        Respectfully submitted,

                                        ROBERT C. TROYER
                                        United States Attorney

                                        By: *s/Clay C. Cook*
                                        Clay C. Cook
                                        Special Assistant United States Attorney
                                        e-mail: clay.cook@usdoj.gov

                                        By: *s/Valeria N. Spencer*
                                        Valeria N. Spencer
                                        Assistant United States Attorney
                                        e-mail:   valeria.spencer@usdoj.gov

                                        United States Attorney's Office
                                        1801 California St., Suite 1600
                                        Denver, Colorado   80202
                                        Telephone: (303) 454-0100
                                        Fax: (303) 454-0402
                                        Attorneys for the United States

## CERTIFICATE OF SERVICE

      I hereby certify that on this 12th day of June, 2018, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT (DOC. 130)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

      *s/Maggie Grenvik*
      Maggie Grenvik
      Legal Assistant
      United States Attorney's Office
      1801 California Street, Suite 1600
      Denver, CO 80202
      Phone: (303) 454-0100
      e-mail: maggie.grenvik@usdoj.gov