IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.  15-CR-200-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SHAWN SHIELDS,

    Defendant.

---

**SENTENCING STATEMENT OF SHAWN SHIELDS**

---

Shawn Shields, through counsel Abraham Hutt of Recht Kornfeld, P.C., provides the court with the following Sentencing Statement pursuant to D.C. Colo. LCrR 32.1(a)(2).

Defense counsel requests that the court impose a sentence of not more than 27 months, the bottom of the applicable guidelines range of 27-33 months.  Counsel submits that such a sentence would be sufficient, but not greater than necessary, to accomplish the sentencing requirements of 18 U.S.C. Sec. 3553(a).

**Acceptance of Responsibility and Nature and Circumstances of the Offense**

Mr. Shields urges the Court, in being advised by the United States Sentencing Guidelines, to apply a two level deduction in the Offense Level for acceptance of responsibility, pursuant to USSG 3E1.1. In application note 2 of the *Commentary* to that Guideline, the Sentencing Commission makes clear that it can apply to someone who has been convicted at trial, but not if he is "denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."  What Mr. Shields did both prior to and during trial was not to deny the essential factual elements of guilt, but

1

instead to assert a right to have the jury consider the affirmative defense of necessity. Mr. Shields never denied any of the three elements of the crime for which he was indicted: that he was an inmate of a prison; that he knowingly possessed an object; and that it was a prohibited object.

Mr. Shields asserted the defense of necessity before and during trial. On the morning of the commencement of trial, immediately prior to beginning jury selection, the court ruled that it was not precluding Mr. Shields from asserting that defense, but made clear its skepticism that he could present sufficient evidence to warrant an instruction to the jury on that defense under the applicable case law. Thus, the government's assertion that Mr. Shields "could have pleaded guilty after the District Court disallowed the defense," is simply wrong. ECF Document 131, *Government's Response to Defendant's Objections to the Presentence Investigation Report* pp 7,8. The defense was not "disallowed" until after the close of all the evidence. Only by adducing the relevant evidence admitted by the Court at trial could Mr. Shields properly endeavor to persuade the Court that he was entitled to a jury instruction on necessity. Only by tendering that jury instruction at the close of the evidence and arguing for its inclusion in the Court's charge to the jury could Mr. Shields properly preserve that important legal issue for appellate review. At no time did counsel for Mr. Shields in their cross-examination of government witnesses or examination of a defense witness deny the Mr. Shields was an inmate or that he possessed prohibited objects. Instead, all of counsel's efforts were to establish the elements of the affirmative defense of necessity and be in a position to argue that he was entitled to a jury instruction on that defense. This is very much like the example described in Application Note 2 of USSG 3E1.1 where a defendant goes to trial

to "challenge the applicability of a statute to his conduct," and is thereby entitled to the reduction for acceptance of responsibility.  It is very unlike the trial example listed in the same Note where a defendant "…den[ies] the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."   As Mr. Shields had no other choice for how to raise the legal issue of the applicability of the defense of necessity and did so in a way that never denied "the essential factual elements of guilt" he is entitled to a 2-point reduction for acceptance of responsibility.

Separate and apart from the acceptance of responsibility issue, and in addition to being entitled to the USSG reduction for that acceptance, Mr. Shields asserts that the facts relating to his assertion of the defense of necessity constitute mitigating evidence for the court to consider regarding the nature and circumstances of the offense.  The video recording which captured virtually all of the relevant conduct in this case speaks for itself.  It first shows Donald Heisler initiating a verbal confrontation with Mr. Shields and then rushing toward a table and picking up an object from his belongings before chasing Mr. Shields up the stairs with that object in his hand.  Mr. Heisler testified at trial that the object he was retrieving was a weapon he referred to as a homemade icepick made out of a colored pencil and designed not to appear as contraband. The video recording further shows the lack of any intervention whatsoever by the guards to Mr. Heisler's behavior toward Mr. Shields or any effort on their part to protect Mr. Shields from the threat they observed and heard.

The video recording later shows Mr. Heisler and Mr. Shields speaking together. Mr. Heisler testified that this conversation consisted of his effort to "put Mr. Shields to sleep;" *i.e.,* talk to him in a manner designed to deceive the much smaller Mr. Shields into

3

believing that the threats Mr. Heisler made have dissipated, making it easier for Heisler to complete his attack at a later time, when Mr. Shields is not expecting it, having been lulled into a false sense of safety.

While the court found this evidence to be insufficient to warrant an instruction to the jury on necessity, based on the presently applicable case law, it clearly did not find the evidence to be non-existent.  There is no question that Donald Heisler both verbally and physically threatened Mr. Shields and but for being tackled by another inmate had the present ability to carry out his stated threat to break Mr. Shields jaw and thrown him off the tier, or to stab him with his icepick.  These facts present a much different scenario than one where a defendant is convicted of possession of a prohibited object never having been the victim of such an attack, or having been the first aggressor.  They consequently warrant a different sentence than would be imposed under such circumstances.  Mr. Shields asserts they make a sentence at the low end of the guidelines the one sufficient but not greater than necessary to accomplish the statutory sentencing requirements.

## Guidelines Calculation

Based on the arguments in the previous section of this Sentencing Statement, Mr. Shields asserts that his Total Offense Level under the United States Sentencing Guidelines is 11.  He further asserts that even if the Court were to sustain his objections to the Criminal History score contained in the Presentence Investigation Report, a Criminal History category of VI would result. Pursuant to USSG Chapter 5, the appropriate sentence range is between 27 and 33 months.

## History and Characteristics of Mr. Shields

Mr. Shields has been in prison since he was 19 years old and is now 45.  He

entered prison as a 5 foot, 6 inch tall overweight teenager with bipolar disorder. It is unlikely that it comes as a surprise to anyone that he managed to survive by possessing weapons and becoming very tough. His other choice was to be a victim of repeated sexual assault.

He does not deny or attempt to excuse the crimes he has committed. He does ask that the court consider the extraordinary number of hours he has put into trying rehabilitate himself. He participates in every mental health treatment opportunity available and the psychology staff reports that his participation is "extensive," engaging with them in ways that are "genuine and insightful." Presentence Investigation Report Paragraph 60. He has completed a 60-hour Anger Management Course and other multiple hours-long mental health programs titled Resolve and Turning Point. He has completed mental health classes in Managing Anxiety, Making Better Choices and Aspects of Addiction

His effort not to simply become institutionalized but to try and keep his mind functioning and make himself appropriate for eventual release to society have included completion of multiple hour classes in all of the following:

Banking Skills

Resume Writing

Commercial Driver's Licensing

Custodial Maintenance

Careers in Education and Social Services

Careers in Food, Agriculture and Natural Resources

Careers in Manufacturing and Transportation

Careers in Communication and the Arts

- Careers in Hospitality, Human Services and Tourism
- Careers in Retail, Marketing and Sales
- Careers in Health Care, Medicine and Science
- Professionalism
- Accounting Fundamentals
- Financial Planning
- Money Management
- Social Security Benefits
- Finding a Job
- How to Rent an Apartment
- Making Successful Presentations

In addition, he has taken numerous adult education classes in a wide variety of subjects, simply as a way to try and use and improve his mind.  They include history, natural sciences, geography, astronomy and art.  Even the incomplete list of those classes in the Presentence Investigation Report totals more than 300 hours.

It is undoubtedly these efforts to engage in rehabilitation that have resulted in Mr. Shields being the engaged, intelligent, respectful, thoughtful, grateful and honest person that his counsel grew to know during the course of this case.  That a person could survive more than 25 years in the brutal environment of prison and develop these traits is a tribute to Mr. Shields' character and desire to maximize the good in himself while acknowledging and accepting the very bad things he has done.

## **Conclusion**

Mr. Shields recognizes that the crimes he has committed can easily overwhelm

every other aspect of his life and that looking beyond them is difficult. He asks that the court consider all of the information provided in this statement and find sufficient mitigation to sentence him to 27 months.

DATED at Denver, Colorado this, __29th__ day of __August__, __2018__.

s/ Abraham V Hutt<br>
Abraham V Hutt<br>
<br>
Recht Kornfeld PC<br>
1600 Stout Street, Suite 1400<br>
Denver, Colorado 80202<br>
(303) 573-1900

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was served this __29th__ day of August, 2018 by ECF upon:

Valeria Neale Spencer     Valeria.Spencer@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, valerie.nielsen@usdoj.gov

Clay C. Cook     c2cook@bop.gov, clay.cook@usdoj.gov, mackenzie.bray@usdoj.gov

Celeste Brianne Rangel     celeste.rangel@usdoj.gov, CaseView.ECF@usdoj.gov, Harmony.Ragland@usdoj.gov, Kelsey.Totura@usdoj.gov, diana.brown@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

s/ Leni Charles<br>
Legal Assistant