IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 15-CR-00200-REB

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

SHAWN SHIELDS,

    Defendant.

_____

**REPORTER'S TRANSCRIPT**
(Jury Trial – Day 3)

_____

      Proceedings before the HONORABLE ROBERT E. BLACKBURN,
Judge, United States District Court for the District of
Colorado, commencing at 8:38 a.m., on the 22nd day of February,
2018, in Courtroom A1001, United States Courthouse, Denver,
Colorado.

Proceeding Recorded by Mechanical Stenography, Transcription
Produced via Computer by Tracy Weir, 901 19th Street,
Room A258, Denver, Colorado 80294, (303) 298-1207

**APPEARANCES**

        VALERIA SPENCER and CLAY COOK, Assistant U.S.

Attorneys, 1801 California Street, Suite 1600, Denver, Colorado

80202, appearing for the plaintiff.

        ABRAHAM HUTT and DAVID BELLER, Attorney at Law, Recht

& Kornfeld, P.C., 1600 Stout Street, Suite 1400, Denver,

Colorado 80202, appearing for the defendant.

                    *   *   *   *   *

**PROCEEDINGS**

        (In open court at 8:38 a.m.)

        *THE COURT:*  Good morning, and thank you.  Please be

seated.

        Very well.  We proceed on the record in open court

operating temporarily outside the presence and hearing of the

jury, which remains in recess vis-a-vis these trial

proceedings.

        We convene as constituted to conclude our formal

charging and jury instruction conference from yesterday

afternoon.

        Madam Clerk, please deliver to counsel for the

Government and Mr. Shields redacted instruction No. 6.

        *COURTROOM DEPUTY CLERK:*  They have it already, Your

Honor.

        *THE COURT:*  Very well.  I revisit D comp 01, which I

said I would interweave in instruction No. 1.  On a closer

1    reading of instruction 1, I discovered that, as I always do,

2    that language appears therein.  Thus, sua sponte, I reconsider

3    my granting of the inclusion of the language in D comp 01,

4    finding and concluding that it is superfluous and unnecessary.

5           With that, you have the formal and final instructions

6    of the Court and the verdict form of the Court.

7           Unless there are objections or good cause otherwise,

8    we will now proceed in the presence of the jury.

9           Further matters by the Government?

10          *MS. SPENCER:*  No, Your Honor.

11          *THE COURT:*  Or by Mr. Shields?

12          *MR. BELLER:*  No.  Thank you, Your Honor.

13          *THE COURT:*  Thank you.

14          Madam Clerk, please retrieve our jury.

15      (Pause in proceedings.)

16          *THE COURT:*  All rise for the jury, please.

17      (Jury in at 8:40 a.m.)

18          *THE COURT:*  Thank you, Madam Clerk.  Ladies and

19   gentlemen, please be seated.

20          I started with a general good morning to all then

21   present.  I can do better.  Mr. Shields, good morning.

22          *THE DEFENDANT:*  Good morning, Your Honor.

23          *THE COURT:*  Counsel, good morning.

24          Ladies and gentlemen at the audience or tech tables,

25   good morning.

1            Last, but certainly not least, ladies and gentlemen of

2   the jury, good morning.

3            *THE JURORS:*  Good morning.

4            *THE COURT:*  We have completed our post-evidentiary

5   matters and our formal charging and jury instruction

6   conference.  We are, again, prepared to resume the trial all

7   together.

8            At this time, Madam Clerk, please deliver to each

9   juror a packet of copies of the instructions and the verdict

10  form approved by the Court for use in this case.

11           As you receive your copy, once again, I exhort you to

12  write your name on it; again, for the obvious purpose of

13  distinguishing your packet of copies from those of your fellow

14  jurors and the original jury instructions which you will also

15  have.

16           Momentarily, I will again read to you the Indictment

17  and then the instructions on the law and the verdict form.  As

18  I read the instructions, if I discover errors that need

19  corrections, I'll call those to the attention of all of you

20  directly involved in the trial of this case for tentative

21  correction.

22           Then as soon as practicable, I will provide you with

23  amended, or corrected, copies of any infected or affected jury

24  instruction or the verdict form.

25           After I read the Indictment, after I read the

1   instructions and the verdict form, then we will proceed to

2   receive the closing arguments of the parties, commencing with

3   the Government, followed by Mr. Shields, and concluding with

4   the Government by way of rebuttal.

5           Now, although each of you have copies of the jury

6   instructions and the verdict form, and although you will have

7   the originals to use in your jury deliberation suite during

8   your solemn deliberations, I encourage you to pay close

9   attention as I read the instructions and the verdict form to

10  you.

11          If there are discrepancies or inconsistencies between

12  the original final instructions and the verdict form and your

13  copies, or any previous instructions that I have given you, you

14  are now to be bound by the original final instructions and the

15  final verdict form.

16          At the end of your service, please do not return your

17  copies of the instructions or the verdict form.  They are for

18  you.  Do with them what you will, governed perhaps by Mark

19  Twain's famous aphorism to eschew that which is illegal,

20  immoral, or fattening.

21          Now, you must not be concerned or affected by the

22  order, appearance, or format of the instructions or the verdict

23  form, including the style or size of print.  Those are all

24  matters that I have handled.

25          Please listen carefully as I now reread the

1   Indictment.  You will not receive a copy of the Indictment.  It

2   is not reiterated in any jury instruction.

3          Indictment.

4          Possessing Contraband in Prison.

5          Count 1.  On or about March 18, 2015, in the state and

6   District of Colorado, the defendant, Shawn Shields, being an

7   inmate of a prison as defined in Title 18 United States Code

8   Section 1791(d)(4), did knowingly possess and obtain a

9   prohibited object; namely, a weapon (other than a firearm or

10  destructive device) and an object that is designed and intended

11  to be used as a weapon, as defined in Title 18 United States

12  Code Section 1791(d)(1)(B).

13         Again, I remind and instruct you that neither the

14  Indictment nor the allegations contained in it constitute

15  evidence in the trial of this case.  Thus, you must not seek to

16  use the Indictment or its allegations as evidence in the trial

17  of this case.

18         These are the instructions on the law of the Court to

19  you members of the jury.

20         Instruction No. 1.

21         Ladies and gentlemen of the jury.  Now that you have

22  heard the evidence and will soon hear argument, it becomes my

23  duty to give you the instructions of the Court as to the law

24  applicable to this case.  It is your sworn duty as jurors to

25  follow the law as I shall state it to you and to apply the law

1   to the facts that you find them from the evidence in the case.

2   You are not to single out one instruction alone as stating the

3   law, but must consider the instructions as a whole.  Neither

4   are you to be concerned with the wisdom of any rule of law

5   stated by the Court.

6          In explaining the rules of law that you must follow,

7   first, I will give you some general instructions which apply in

8   every criminal case; for example, instructions about burden of

9   proof and insights that may help you to judge the believability

10  of witnesses.  Then I will give you some specific rules of law

11  that apply to this particular case, and, finally, I will

12  explain the procedures you should follow in your deliberations

13  and the possible verdicts you may return.

14         Counsel may properly refer to the governing rules of

15  law in their arguments.  If, however, any difference appears to

16  you between the law as stated by counsel and that stated by the

17  Court in these instructions, you are, of course, to be governed

18  by the final instructions of the Court.

19         Nothing the Court says in these instructions is to be

20  taken as an indication that the Court has any opinion about the

21  facts of the case or what that opinion is.  It is not the

22  function of the Court to determine the facts but, rather,

23  yours.

24         You were chosen as a juror for this trial in order to

25  evaluate all the evidence received and to decide each of the

1  factual questions presented by the allegations brought by the

2  Government in the Indictment and the corresponding pleas of not

3  guilty by the defendant.  You must perform your duties as

4  jurors without bias or prejudice as to any party.  The law does

5  not permit you to be governed by sympathy, bias, prejudice, or

6  public opinion.  All parties expect that you will carefully and

7  impartially consider all the evidence, follow the law as it is

8  now being given to you, and reach a just verdict, regardless of

9  the consequences.  That is the oath that you took and the

10 promise you made.

11           The evidence in this case consists of the sworn

12 testimony of the witnesses, regardless of who may have called

13 them, and all exhibits admitted in evidence, regardless of who

14 may have offered them.  Nothing else is evidence.

15           The statements and arguments of the lawyers are not

16 evidence.  What the lawyers said to you or showed to you during

17 their opening statements and their closing arguments is not

18 evidence.  Their questions and objections are not evidence.

19 Thus, if a lawyer asks a question of a witness that contains an

20 assertion of fact, you must not consider the assertion by the

21 lawyer as any evidence of that fact.  Only the answers of the

22 witnesses are evidence.

23           The legal rulings of the Court are not evidence.  The

24 comments, admonitions, and questions of the Court are not

25 evidence.

1    Anything you may have seen, heard, read, or viewed

2    outside the courtroom is not evidence and must be disregarded

3    entirely.

4        There are two types of evidence from which a jury may

5    properly determine the facts of a case.  One is direct evidence

6    presented by a percipient witness, such as the testimony of an

7    eyewitness or ear witness.  The other is indirect or

8    circumstantial evidence; that is, the proof of a chain of facts

9    which point to the existence or nonexistence of certain other

10   facts.  As a general rule, the law makes no distinction between

11   direct and circumstantial evidence, but requires that the jury

12   find the facts in accordance with the evidence in the case,

13   both direct and circumstantial.

14       If any reference by the Court or by an attorney to

15   matters of evidence, whether testimony or exhibits, does not

16   coincide with your recollection of that evidence, it is your

17   recollection which should control during your deliberations and

18   not the statements of anyone else.  You are the sole judges of

19   the evidence received in this case.

20       You are to consider only the evidence in the case.

21   However, in your consideration of the evidence, you are not

22   limited to just the statements of the witnesses.  In other

23   words, you are not limited solely to what you saw and heard as

24   the witnesses testified.  You are permitted to draw, from the

25   facts which you find have been proved, such reasonable

1   inferences as you feel are justified in light of your

2   experience.  An inference is a conclusion that reason and

3   common sense may lead you to draw from the facts which you find

4   have been proved beyond a reasonable doubt.  By permitting such

5   reasonable inferences, you may make deductions and reach

6   conclusions that reason and common sense lead you to draw from

7   the facts which have been established by the testimony and

8   evidence in this case.

9           The mere number of witnesses appearing for or against

10  a particular fact, issue, or proposition does not in and of

11  itself prove or disprove that fact, issue, or proposition.  You

12  may find that the testimony of a small number of witnesses as

13  to any fact is more credible than the testimony of a larger

14  number of witnesses to the contrary.

15          Any evidence to which an objection was sustained by

16  the Court, and any evidence ordered stricken by the Court must

17  be disregarded entirely.

18          You are here to decide whether the Government has

19  proved beyond a reasonable doubt that defendant is guilty of

20  the crime with which he is charged in the Indictment.

21          Defendant is not on trial for any act, conduct, or

22  crime not charged in the Indictment.  Neither the Indictment

23  nor the allegations contained in it are evidence.

24          At the end of the trial, you will have to make your

25  decision based on what you recall of the evidence.  You will

1   not have a written transcript to consult, and it is difficult

2   and time-consuming for the reporter to read back lengthy

3   testimony, if she is even permitted to do so.

4       Any verdict of the jury must represent the considered

5   judgment of each juror.  In order to return a verdict, it is

6   necessary that each juror agree.  Any verdict must be

7   unanimous.

8       As jurors, it is your duty to consult with one another

9   and to deliberate with a view to reaching an agreement, if you

10  can do so without violence to individual judgment.  You must

11  each decide the case for yourself but only after an impartial

12  consideration of the evidence in the case with your fellow

13  jurors.  In the course of your deliberations, do not hesitate

14  to reexamine your own views and change your opinion if

15  convinced it is erroneous.  However, do not surrender your

16  honest conviction as to the weight or effect of evidence solely

17  because of the opinion of your fellow jurors or for the mere

18  purpose of returning a verdict.

19      Remember at all times that you are not partisans.  You

20  are judges, judges of the facts.  Your sole interest is to seek

21  the truth from the evidence in the case and retain [sic] a just

22  verdict based on the evidence in the case and the law as the

23  Court has presented it to you.

24      Instruction No. 2.

25      I remind you that it is your job to decide whether the

1   Government has proved the guilt of the defendant beyond a

2   reasonable doubt.  In doing so, you must consider all of the

3   evidence.  This does not mean, however, that you must accept

4   all the evidence as true or accurate.

5        You are the sole judges of the credibility or

6   believability of each witness and the weight to be given to the

7   witness's testimony.  An important part of your job will be

8   making judgments about the testimony of the witnesses who

9   testified in this case.

10       You should think about the testimony of each witness

11  you have heard and decide whether you believe all or any part

12  of what each witness had to say and how important that

13  testimony was.  In making that decision, I suggest that you ask

14  yourself a few questions.  Did the witness impress you as

15  honest?  Did the witness have any particular reason not to tell

16  the truth?  Did the witness have a personal interest in the

17  outcome in this case?  Did the witness have any relationship

18  with either the Government or the defense?  Did the witness

19  seem to have a good memory?  Did the witness clearly see or

20  hear the things about which he/she testified?  Did the witness

21  have the opportunity and ability to understand the questions

22  clearly and answer them directly?  When weighing conflicting

23  testimony, you should consider whether the discrepancy has to

24  do with a material fact or with an unimportant detail.  You

25  should keep in mind that innocent misrecollection, like failure

1   of recollection, is not uncommon.

2            If you heard the testimony of a witness who, before

3   this trial, may have made statements that are different from

4   his testimony here in court, you may consider the earlier

5   statements only to help you determine the credibility of the

6   witness.  You may not use evidence of any prior inconsistent

7   statements as proof of anything else.  You may only use such

8   evidence as one way of evaluating the testimony of the witness

9   here in court.

10           The testimony of a witness may be discredited or

11  impeached by showing that the witness previously has been

12  convicted of a felony; that is, of a crime punishable by

13  imprisonment for a term of years or a crime of dishonesty or

14  false statement.  A prior conviction does not mean that a

15  witness is not qualified to testify but is merely one

16  circumstance that you may consider in determining the

17  credibility of the witness.  You may decide how much weight to

18  give any prior felony conviction that was used to impeach a

19  witness.

20           Defendant did not testify, and I remind you that you

21  may not consider his decision not to testify as evidence of

22  guilt.  I want you to clearly understand, please, that the

23  Constitution of the United States grants to a defendant the

24  right to remain silent.  That means the right not to testify or

25  call any witnesses.  That is a constitutional right in this

1   country.  It is very carefully guarded, and you should

2   understand that no presumption of guilt may be raised and no

3   inference of any kind may be drawn from the fact that a

4   defendant does not take the witness stand and testify or call

5   any witnesses.

6          Instruction No. 3.

7          Defendant has entered a plea of not guilty to the

8   crime charged in the Indictment.  Under the law, defendant is

9   presumed to be innocent of the crime with which he is charged.

10  The Government, not defendant, has the burden of proof.  This

11  burden requires proof beyond a reasonable doubt.  Therefore,

12  the Government must establish guilt by proof beyond a

13  reasonable doubt.  Defendant does not have to prove his

14  innocence or call any witnesses or conduct any examination or

15  cross-examination or present any evidence, although he may do

16  so.

17         While the Government's burden of proof is a strict or

18  heavy burden, proof beyond a reasonable doubt does not mean

19  proof beyond all possible doubt.

20         Proof beyond a reasonable doubt is proof that leaves

21  you firmly convinced of the guilt of the defendant concerning

22  the crime then under your consideration.  There are few things

23  in this world that we know with absolute certainty, and in

24  criminal cases, the law does not require proof that overcomes

25  every possible doubt.  The law requires that the Government's

1  proof exclude any reasonable doubt concerning the guilt of the

2  defendant.

3        A reasonable doubt is a doubt based on reason and

4  common sense after careful and impartial consideration of all

5  the evidence or lack of evidence in the case.  It is not a

6  vague, speculative, or imaginary doubt, but the kind of doubt

7  that would cause a reasonable person to hesitate to act in a

8  matter of importance to himself or herself.

9        If, based on your consideration of the evidence, you

10  are firmly convinced that defendant is guilty of the crime

11  charged in the Indictment, you must find defendant guilty of

12  that crime.  If, on the other hand, you think there is a real

13  possibility that the defendant is not guilty of the crime

14  charged in the Indictment, you must give him the benefit of the

15  doubt and find him not guilty of that crime.

16        Instruction No. 4.

17        You will note that the Indictment charges that the

18  crime was committed on or about March 18, 2015.  The Government

19  must prove beyond a reasonable doubt that defendant committed

20  the crime reasonably near March 18, 2015.

21        Instruction No. 5.

22        You are here to decide whether the Government has

23  proved beyond a reasonable doubt that defendant is guilty of

24  the crime charged in the Indictment.  Defendant is not on trial

25  for any act, conduct, or crime not charged in the Indictment.

1        Instruction No. 6.

2            Title 18 United States Code Section 1791 makes it a

3    crime for an inmate of a federal prison to make, possess, or

4    obtain, or attempt to make, possess, or obtain, a prohibited

5    object.

6            For you to find defendant guilty of the crime of

7    possessing contraband in prison, you must be convinced the

8    Government has proved each of the following three essential

9    elements beyond a reasonable doubt.

10           First:  That defendant was an inmate of a prison; and

11           Second:  That defendant knowingly possessed an object.

12   The term "knowingly" is defined in instruction No. 7.

13           Third:  That the object is a prohibited object.

14           The term "prison" means a federal correctional,

15   detention, or penal facility or any prison, institution, or

16   facility in which persons are held in custody by direction of

17   or pursuant to a contract or agreement with the attorney

18   general.

19           The term "prohibited object" means a weapon (other

20   than a firearm or destructive device), or an object that is

21   designed or intended to be used as a weapon.  If you find after

22   consideration of all the evidence that each and all of these

23   three essential elements have been proven beyond a reasonable

24   doubt, then you should find defendant guilty of the crime of

25   possessing contraband in prison and should so indicate on the

 1 | verdict form.

 2 | On the other hand, if you find, after consideration of

 3 | all the evidence, that any one or more of these essential

 4 | elements has not been proven beyond a reasonable doubt, then

 5 | you must find defendant not guilty of the crime of possessing

 6 | contraband in prison and should so indicate on the verdict

 7 | form.

 8 | Instruction No. 7.

 9 | When the word "knowingly" is used in this instruction,

10 | it means that the act was done voluntarily and intentionally

11 | and not because of mistake or accident.

12 | Instruction No. 8.

13 | If you find defendant guilty, it will be my duty to

14 | decide what the punishment will be.  You should not discuss or

15 | consider the possible punishment in any way while deciding your

16 | verdict.

17 | Instruction No. 9.

18 | If it becomes necessary during your deliberations to

19 | communicate with the Court, you may send a note via the bailiff

20 | signed by your foreperson or by one or more members of the

21 | jury.  No member of the jury should ever attempt to communicate

22 | with the Court regarding the issues of the case by any means

23 | other than such a signed writing, and the Court will never

24 | communicate with any member of the jury on any subject touching

25 | the merits of the case other than in writing or orally here in

1    open court.

2           If you do send a note to the Court containing a

3    question or request for further direction, please bear in mind

4    that a response will take some time and effort.  The Court must

5    first notify counsel to return to court.  Then the Court must

6    confer with counsel, consider their arguments, and, if

7    necessary, research the question before reducing the answer or

8    direction, if any, to writing.

9           There may be some questions or matters that under the

10   law the Court is not permitted to answer or address.  If it is

11   improper for the Court to answer the question or address the

12   issue, the Court will tell you.  Please do not speculate about

13   what the answer to your question might be or why the Court is

14   not able to answer a particular question or address a

15   particular matter.

16          You will note from the oath about to be taken by the

17   bailiffs that they, too, as well as all other persons, are

18   prohibited to communicate in any way or manner with any members

19   of the jury on any subject touching the merits of the case.

20          Bear in mind also that you are never to reveal to any

21   person, not even to the Court, how the jury stands, numerically

22   or otherwise, on the questions before you until after you have

23   reached a unanimous verdict.

24          Instruction No. 10.

25          The original written instructions are a part of the

1   court record.  You are not permitted to write any notes on the

2   original instructions or to deface them in any way.  The

3   original instructions and the exhibits are to be returned to

4   the Court at the conclusion of your deliberations.

5           When you go to the jury room, you should first select

6   a foreperson who will help to guide your deliberations and will

7   speak for you here in the courtroom.  The second thing you

8   should do is review carefully the instructions and verdict

9   form.  Not only will your deliberations be more productive if

10  you understand the legal principles on which your verdict must

11  be based, but for your verdict to be valid, you must follow the

12  instructions throughout your deliberations.  Remember, you are

13  the judges of the facts, but you are bound by your oath to

14  follow the law stated in the original instructions of the

15  Court.

16          You may deliberate only while all jurors are present

17  together in the jury room.  You must suspend your deliberations

18  until and unless you are all present together in the jury room.

19          Your deliberations will be secret.  You will never

20  have to explain your verdict to anyone.

21          The verdict you reach must represent the collective

22  judgment of the jury.  In order to return a verdict, it is

23  necessary that each juror agree to it.  In other words, any

24  verdict you reach must be unanimous.

25          Any verdict you return must be based solely on the

1   evidence received in the case.  Nothing you have seen, heard,

2   observed, or read outside of court may be considered.  Nothing

3   that the Court has said or done during the course of this trial

4   is intended, in any way, to suggest to you somehow what the

5   Court thinks your verdict should be.  Nothing said in these

6   instructions and nothing in any form of verdict which has been

7   prepared for your convenience is to suggest or convey to you in

8   any way or manner any intimation as to what verdict the Court

9   thinks you should return.  What any verdict shall be is the

10  exclusive duty and responsibility of the jury.  As the Court

11  has told you many times, you are the sole judges of the

12  evidence and facts.

13          A verdict form has been prepared for your convenience.

14  You will take the verdict form to the jury room, and when you

15  have reached unanimous agreement as to your verdict, you will

16  have your foreperson enter your verdict on the verdict form and

17  date and sign, together with all other jurors, the verdict

18  form.

19          When you have arrived at your verdict and have

20  completed, dated, and signed the verdict form, your foreperson

21  shall notify the bailiff, who, in turn, will notify the Court.

22  You shall remain in the jury room until the Court calls for you

23  to return to the courtroom.  When you return to the courtroom,

24  your foreperson should bring the original instructions and the

25  verdict form with him or her.

1        Directing your attention now to the verdict form.

2   Under the caption of this case, the paper is entitled "Verdict

3   Form."  It reads as follows:

4        We, the jury, on our oaths, unanimously find

5   defendant, Shawn Shields, on the crime of possessing contraband

6   in prison as charged in Count 1 of the Indictment, the

7   essential elements of which are set forth in instruction No. 6,

8   and below is a blank for guilty and not guilty.

9        On page 2, the verdict form reads "Dated this blank

10  day of blank, 2018," and then there are signature lines for the

11  foreperson and the other members of this jury.

12       Ladies and gentlemen, those constitute the

13  instructions on the law applicable to the trial of this case

14  and the verdict form prepared by the Court for your convenient

15  reference and use during your solemn deliberations.

16       The attorneys will now present closing arguments,

17  sometimes called final arguments or summations, commencing with

18  the Government's opening portion of the closing argument,

19  followed by the closing argument of Mr. Shields, and concluding

20  with the Government's rebuttal closing argument.

21       This order is required by federal law.  You must not

22  be prejudiced against any party based on the order in which the

23  party makes closing argument.  That order is irrelevant to you.

24       I remind and instruct you that, like opening

25  statements, closing arguments are not evidence and should not

1   be considered as such by you.  Thus, what the attorneys say to

2   you or show to you during their closing arguments, that is not

3   evidence.  In this trial, the evidence came not from the

4   podium, but, instead, from the witness stand.

5           Very well.  If the Government is prepared to make its

6   opening closing argument, it may.  Ms. Spencer.

7           *MS. SPENCER:*  Thank you, Your Honor.

8           *THE COURT:*  You're welcome.

9           *MS. SPENCER:*  Permission to move the podium a little

10  bit, Your Honor.

11          *THE COURT:*  Granted, with the assistance of the clerk.

12  Thank you.

**CLOSING ARGUMENT**

14          *MS. SPENCER:*  The morning of March 18, 2015, inmate

15  Shawn Shields is in his cell A205, the unit has been locked

16  down, indoor rec is over.  It's decision time because inmate

17  Heisler, who has been at the ADX a long time, comes by Shields

18  and says, "We're going to segregation.  You better get rid of

19  your stuff.  We're going to the SHU."

20          So now inmate Shields has to decide, what am I going

21  to do with my shanks because if I leave them in my cell, the

22  staff's going to find them during the shakedown that's going to

23  happen.  They're going to search my cell and find I'm in

24  possession of those shanks.  My buddy Donald said I should get

25  rid of them.  I don't want to get rid of my shanks.  I'll bring

1  them with me.

2       Now, what inmate Shields knows is, going to the SHU,

3  he's going to be patted down.  When he gets out of the cell,

4  they're going to pat him down.  It is a close body search, they

5  go through his body to see if anything is on him.

6       Can't do that.  He'll be strip searched.  They'll take

7  all his clothes off when I get over there.  They won't touch

8  me, but they'll be looking.  So I can't have it somewhere on my

9  body.

10      How about in my body?  To borrow a phrase from

11  Mr. Hutt, the odds might be in my favor.  I might be able to

12  beat it if I shove all of that, the shanks, the little

13  cardboard coozie that holds them with plastic on it, with

14  toilet paper around it, another cardboard sheath and plastic

15  around that, and I shove that all up into my rectum.  Maybe the

16  odds will be in my favor, and they won't find them and I get to

17  keep my weapons.

18      So he has a choice.  He's already in possession.

19  Might as well go for it.  To paraphrase him, "damn technology."

20  The SecurPASS is what ends up tripping him up, and the odds are

21  not in his favor.

22      The judge just carefully instructed you on the law in

23  this case.  I want to turn to instruction No. 6.  Instruction

24  No. 6 is the elemental instruction, if you will, that talks

25  about the elements that the Government has to prove to find the

1   defendant guilty of possessing contraband in prison.  You must

2   be convinced beyond a reasonable doubt of these three elements.

3   Three essential elements.  Number 1, the defendant was an

4   inmate of a prison.  Number 2, the defendant knowingly

5   possessed an object.  Number 3, that object is a prohibited

6   object.  Okay.  So those are the elements that we have to

7   prove.  We'll talk about those carefully.

8           I want to remind you of that beyond a reasonable doubt

9   standard that's in instruction No. 3.

10          Proof beyond a reasonable doubt is proof that leaves

11  you firmly convinced of the guilt of the defendant concerning

12  the crime possession of contraband in prison then under your

13  consideration.  You know, there are few things in this world

14  that we know with absolute certainty.  In a criminal case, the

15  law does not require proof that overcomes every possible doubt.

16  The law requires that the Government's proof exclude any

17  reasonable doubt concerning that guilt.  Reasonable doubt is

18  not a vague, speculative, or imaginary doubt.

19          So with that as our background in instruction No. 3,

20  let's talk about these elements a little more carefully.

21  Number 1.  The defendant was an inmate of a prison.  Okay.  The

22  term "prison" means federal correctional, detention, or penal

23  facility, or any prison, et cetera.  Okay.

24          Here we have in Exhibit 2 the diagram of J unit, that

25  step-down unit in ADX.  What is ADX?  We use that acronym.  You

1    have the testimony.  It's part of the Federal Correctional

2    Complex in Florence, Colorado.  It is a United States

3    Penitentiary Administrative Maximum.  There is only one ADX

4    within the federal Bureau of Prisons.  It is a federal

5    correctional facility.

6         Shawn Shields, there is he.  A205, the upper tier of

7    the step-down unit, J unit, at ADX.  He is a federal inmate in

8    prison.

9         The second element is that the defendant knowingly

10   possessed an object.  Instruction No. 7 defines "knowingly" for

11   you.  As used in these instructions, it means the act was done

12   voluntarily and intentionally and is not a mistake or an

13   accident.  What evidence do we have for that?

14        Well, here's the real scene of the action.  This is

15   where the rubber meets the road.  This is when the defendant is

16   taken to the Special Housing Unit down the hallway in ADX.

17   It's unit C.  He was in unit J.  He gets moved here.  Lo and

18   behold, it's time to face the facts.  Here it is.  The

19   SecurPASS machine.  This is the moment that the odds are not in

20   his favor.

21        It's like going to the airport.  You know when you go

22   through TSA, they have you step in, put your feet on the spots,

23   and you put your hands up and you have to stand still while the

24   machine goes around.  Same idea going on here.  There's the

25   little foot marks.  You're supposed to look down and you stand

1    still and it moves for you instead of having it move around us

2    at the airport.  It moves you through and back.  You see the

3    computer screen.  Officer Anderson is looking at it.  It looks

4    like something.  I think there's something in there.  It's

5    glowing.  I'm not sure.  He gets another lieutenant involved.

6    Lieutenant Alvarez comes over.  He's asking the inmate, "Have

7    you had any kind of back surgery?"  Because where it's located

8    it could be a screw, lower back surgery, some lumbar surgery,

9    anything.  The defendant, he takes that lifeline, doesn't he?

10   Buffaloes his way through, "Yes, I've had back surgery.

11   There's a screw back there."  Alvarez is like, I better call

12   about that.  Let me see.  Anderson puts him through again.

13   This time let's move those cuffs up and see what's in there,

14   you know, see what we have.

15           Defendant is now going to bargain.  "If you show it to

16   me on the screen, you prove it up to me, I'll give it to you."

17   Now, he knows there's something in there, and they're not going

18   to let go of this because he's been SecurPASSed a couple times.

19   He's bargaining.  "You show it to me on the screen, and I'll

20   give it to you."  Maybe he thinks they're bluffing.  This isn't

21   a card game in prison.  This is serious business.

22           So they take him down, bring it over and show him.

23   This is what the guards were looking at.  Correctional officers

24   are taking a look at this.  When you look at it closer up, you

25   can see there's something down there by the handcuffs.  So they

1   show it to him and say, "Hey, you know, inmate Shields this is

2   you in x-ray form.  This is what you look like.  There's your

3   ankle restraints, your handcuffs, there's your glasses, and

4   there's something inside of you.  It is not on your clothing.

5   It is inside of you.  There is something in your prison purse."

6   Isn't that a nice phrase that they had to come up with in

7   prison because it happens enough?  "There's something, inmate

8   Shields, in your prison purse, and you know it."

9        Okay.  "You got me."  He admits it.  "Yep."

10  Lieutenant Alvarez said, you know, what he was calm, cool,

11  collected all the way through.  This is a business transaction.

12  Yeah.  You got me.  Yeah.  I really was speeding.  I was

13  10 miles over the limit.  I didn't know you have radar,

14  Officer.  Same sort of thing.  "You got me.  Damn technology

15  nowadays is a bitch.  Just escort me to a cell and I'll give it

16  to you and that's my word.  Plus, I don't want Osagie's fat

17  fingers up my ass.  You got me."

18       The final thing we have to prove, third element, is

19  that the object is a prohibited object.  That's defined as well

20  so it's not just anything, right?  We have to know what it is.

21  It's a weapon, not a firearm or destructive device, or an

22  object that is designed or intended to be used as a weapon.

23       What was it that Shawn Shields, when he went into that

24  cell, pulled out of his rectum?  This is it in its unwrapped

25  form.  There's been nothing but testimony about this being a

1   weapon.  Nobody called these shanks anything but a weapon.  He

2   bundled all this up and shoved it up inside him to avoid

3   detection by the correctional officers.  A 4 1/2 shank and

4   1 1/2-inch shank tightly tucked into the shank coozie made out

5   of cardboard and plastic, wrapped again in toilet paper,

6   wrapped around in cardboard, wrapped around in plastic, and all

7   put up inside of him.

8           These items were sharpened.  These shanks were

9   sharpened.  Officer Munoz talked about that.  When he was

10  taking them out of the bag you could hear them clanking against

11  each other.  You can tell there's heft in there.  Pulled them

12  out of the bag and showed you.  Here they are close up.  Here's

13  the 1 1/2-inch shank.  How handy is that?  I think this is even

14  longer than 1 1/2 inches.  I can hide it completely in my hand

15  with just the point out of it, and imagine the damage it can

16  cause.  That's why it's a prohibited object because it's

17  sharpened into a weapon where I can hurt somebody.  I can hurt

18  staff when they're feeding me.  I could possess it, and I could

19  use it for all sorts of reasons.  There's the short one.

20          Here's the one, the moneymaker.  This is the one that

21  says, I mean business.  You wave that around, nobody is coming

22  at you, right?  Sharpened to a point.  There it is, the metal

23  shanks that this man wanted so desperately to keep that he was

24  willing -- even Heisler was, like, eewww, I wouldn't do that.

25  How distasteful.  He was willing to put them up inside of him

1    and take them with him to the SHU.

2          So you heard two days of testimony.  It all comes down

3    to these three elements.  Inmate in a federal prison, knowingly

4    possessed an object, and that object was the shanks.

5          So I could sit down now and you're thinking, well,

6    wait a minute.  We have been here two days and we have all

7    sorts of video and we have heard so much about the J unit.

8    What about all of that?

9          There's nothing in the jury instructions that says we

10   have to prove why he possessed that object.  That's really what

11   all that testimony and cross-examination was about, why would

12   he possess those things?  You know, he really had some reasons

13   to do that.

14         When you ask yourself, why did he possess, it's an

15   invitation to speculation, and that's a specific word that's

16   used in the reasonable doubt instruction.  We're not talking

17   about speculating about why he had them.  We're talking about

18   whether the Government has met its burden of proof that he did,

19   in fact, possess that prohibited object.

20         Nonetheless, we'll talk a little bit about J.  What

21   was going on in J all this time?  I'm going to pull up video

22   3C.  Or borrow a phrase from the inmate, "damn technology."

23   Maybe not.  You will be taking the videos back with you with a

24   laptop into the jury room for your deliberations if you wish to

25   view any portions, part of it, whatever it is that may help in

1    your deliberations.  Hopefully, this will come up.

2              *COURTROOM DEPUTY CLERK:*  It should be.

3              *MS. SPENCER:*  This is what happens when you switch

4    from PowerPoint to video media player, I suppose.  Well, I

5    guess we're not going to get to see it.

6              What I wanted to show you starts at 8:12:30 on video

7    3C.  That's the time in which inmate Heisler comes upstairs and

8    begins discussing whatever with inmate Shields.  First at the

9    front of the range and they're talking.  That's on the camera.

10   3B.  Then they move to the back of the range and talking back

11   there.  And they're talking and talking and talking.  It really

12   is about at least ten minutes of talking that they are

13   together.  We don't get to hear what they're saying.  We get to

14   watch that body language.  We get to see what's going on in

15   there.  There's a whole lot of comfort.  There's no concerns in

16   that body language.  They have their leg up and they're leaning

17   over the railing of the upper tier kind of hanging out.

18             At the very beginning of the tape, inmate Heisler is

19   in back pain, he's angry.  There it is.  Inmate Heisler is not

20   in a good mood.  He's not working out.  Shields says something

21   to him, and he takes exception.  Shields knows so he goes

22   running up the stairs, and Heisler interestingly says he has an

23   ice pick.  Really?  Well, no one seems to have recovered that.

24   Even in opening counsel said it was a pencil.  Then it turned

25   into an ice pick under Heisler.  Chase him with an ice pick.

1        He runs up the stairs and he says, "Come back here and
2   I'm going to break your jaw."  Well, you know, I'm not one of
3   those MMA fighters, but a break of the jaw, I think that's a
4   fist.  I don't think it is an ice pick.  I don't think it is a
5   pencil.  It is more of a fist.  "I'm going to break your jaw."
6   He's mad about what was being said.  That's what's really going
7   down.  This is after the event, right?  That happened at 8:10.
8   Here we are at 8:13.  As I said, they're in the back of the
9   range and visiting and talking.

10        Heisler told you, "You know, if he had a knife, if he
11   had a pulled a knife on me, I would have pulled it away from
12   him and used it against him."

13        So if you're thinking, you know, maybe Shields had the
14   weapon with him.  Maybe it was in his rectum.  When you watch
15   the tape and he runs upstairs, he does stop at his cell and
16   grabs something.  When you watch him here at 8:17 on 3C, you
17   see him show something in his waistband to Heisler.  I'm sure
18   he wasn't showing the shank because you saw Heisler.  He's kind
19   of a hair-trigger guy, and he probably would have pulled it out
20   and used it against him and, as he said, we'd be here for a
21   different purpose.

22        So, instead, we have an inmate who either already has
23   the shanks in his rectum when he's out at rec, and if he's so
24   scared, why didn't he take the opportunity to pull it out and
25   have it at the ready, which he didn't, or it's in his cell and

1   when he's locked down in his cell, then he has to decide what

2   to do.  Either way he's in the possession of those weapons

3   during the SecurPASS time.  That's really the key part.

4        While I'm here talking, they're there talking as well.

5   You can see they're talking, yes.  Is she still talking?

6   Sorry.  Yeah.  There they are still visiting.  At 8:17, you'll

7   see him kind of flash the waistband for whatever intent that

8   may have.

9        I'm not seeing the angry inmate Heisler that was

10  posited to us.  Now, I'm not saying that man's not.  You

11  watched him yesterday.  The judge gave you the instructions on

12  credibility.  This is a man who's been at ADX since 2004.  He's

13  been in federal custody since 1999.  This is what I would call

14  a lifetime prisoner.  This is someone who knows the system and

15  he knows the ins and outs.  He's a big guy.  Is Shields doing

16  anything there, anything to show his worry?  These are two guys

17  who are just jawing.  They're just talking.  It is their rec

18  time.  There are other inmates walking around.  You see

19  Basciano go by, Shyrock with him, the other two inmates up on

20  the tier, went down.  There is a lot of casual body language.

21  There is nobody gearing up for anything bad that's going to

22  happen.

23        You know what's interesting about all this, when

24  Heisler goes off on Shields and says, "Come back here and I'll

25  break your jaw," Basciano grabs Heisler and tells him, "Take

1    the long view.  Think of your daughter.  Remember where you

2    are.  You want to release from here.  Follow the rules."

3    Heisler said, "Yeah, you know.  I know.  I know the rules.  I

4    know Basciano followed them" because Basciano programmed out of

5    the step-down unit, and he's no longer at ADX and Heisler still

6    is.

7         You know, Heisler realized that.  He said, "You know,

8    I told Thompson when he talked to me, you know, Technician

9    Thompson, Basciano didn't have anything to do with this.

10   Nothing bad should happen to him because Basciano was really

11   the good guy here."  He's trying to tell him, "Man, you want to

12   keep doing this, you want to follow the rules and be square."

13   Heisler didn't want to do that and neither did inmate Shields.

14        He decided to take a gamble instead and arm himself

15   with some shanks and take those with him to the SHU.  What he

16   didn't realize is when he got to the SHU, that he was going to

17   be caught up by technology.

18        Mr. Cook talked to you at the beginning, the idea of

19   technology being a blessing or curse.  I think we related, you

20   know, you have the GPS that helps you navigate downtown until

21   it doesn't.  It's good until it doesn't work.  SecurPASS is

22   great for law enforcement and detention.  You know, it's not

23   great for somebody who didn't know about it and didn't count on

24   it as his way of getting caught.  He was hiding those shanks

25   from the correctional officers.  He wasn't hiding the shanks

1   from Heisler.  They're still talking.  He was hiding the shanks

2   because he knew the rules of the unit.  He knew the rules of

3   ADX.  You cannot be in possession of contraband in prison.

4          He tried.  He tried to keep the odds in his favor.

5   "Yeah.  I had back surgery.  Show it to me, you know, prove it

6   up to me," and then when they did, "All right.  You got me fair

7   and square."  That was the right answer.

8          We have proven these elements beyond a reasonable

9   doubt, all three of the elements under instruction No. 6 and

10  the beyond a reasonable doubt standard in instruction No. 3.

11         I'm going to come back after you hear closing argument

12  from defense and have a few final comments about this case, but

13  I'm confident that we have proven this case beyond a reasonable

14  doubt.

15         I'm going to stop talking even though these two have

16  not yet finished their conversation in the unit.  Thank you.

17         *THE COURT:*  Counsel, thank you.

18         Very well.  If Mr. Shields is prepared to make his

19  closing argument by counsel, he may.  Mr. Hutt.

20         *MR. HUTT:*  May I have a moment, Your Honor?

21         *THE COURT:*  You may, of course.  Thank you.

22     (Pause in proceedings.)

23         *MR. HUTT:*  Your Honor.

24         *THE COURT:*  Counsel.

25         *MR. HUTT:*  We believe the jury has everything they

1    need to find Mr. Shields not guilty.  We decline closing

2    argument.

3        *THE COURT:*  Very well.  That obviates the necessity

4    for rebuttal closing argument by the Government.

5        Counsel, to your knowledge, are all trial exhibits

6    present intact and available to this jury for viewing and

7    consideration during their solemn deliberations?

8        *MS. SPENCER:*  Yes, Your Honor.

9        *MR. HUTT:*  They are, Your Honor.

10       *THE COURT:*  Thank you.

11       Ladies and gentlemen of the jury, the evidence is in.

12   You've been instructed on the law, and you have received the

13   closing argument of the Government.  In a few minutes, you will

14   retire to commence your solemn deliberations.

15       Again, I remind and instruct you you may deliberate

16   only while all jurors are present together in the jury room.

17   You must suspend your deliberations until and unless you are

18   all together in the jury room.

19       Now, ladies and gentlemen, during your deliberations

20   you may review the tangible, physical evidence, including the

21   alleged contraband, the alleged weapons, here in the courtroom.

22   Simply make your request to the bailiff so that the appropriate

23   arrangements can be made.

24       Of course, you should not and may not touch or handle

25   the alleged contraband.

1        Also during your deliberation, you may view the

2   evidence electronically using the laptop computer and the

3   compact disks provided by the Court.

4        Lunch will be provided you courtesy of the Court.

5        At this time, those who will serve as the initial

6   bailiffs of the Court should come forward to be sworn by the

7   Court.  If you'll come to stand in this open area on the left

8   side of my bench.

9        Good morning.

10       *COURT SECURITY OFFICER:*  Good morning, sir.

11       *THE COURT:*  Please raise your right hands to be sworn.

12   May I have your attention in the courtroom.

13       (Bailiffs sworn.)

14       *THE COURT:*  Thank you.  Please stand by.

15       Madam Clerk, you are authorized and directed to

16   administer this same solemn oath to any other person who may be

17   approved by the Court as a bailiff of this jury in this trial.

18       I now make available to you the original jury

19   instructions and the verdict form and direct that you make the

20   exhibits admitted in evidence available to the jury as soon as

21   practicable.  I believe that has been accomplished.

22       Very well.  Juror No. 9, Ms. Kacey MacLaughlin, where

23   are you, ma'am?  Very well.  You are the alternate juror in the

24   trial of this case.  If you will please remain seated and stand

25   by.

 1           To the 12 regular jurors, I now formally submit this

 2    case to you to commence your solemn deliberations.  Good luck

 3    and Godspeed.

 4           All rise pending the exit of the 12 regular jurors.

 5      (Jury out at 9:39 a.m.)

 6           *THE COURT:*  Thank you, Madam Clerk.

 7           Again, please be seated.

 8           Counsel, will you join me at my bench, please.

 9      **(At the bench:)**

10           *THE COURT:*  Thank you.  I propose that we retain the

11    alternate juror but not sequester her in the courthouse but,

12    instead, excuse her subject to the continuing rules,

13    admonitions, and prohibitions that have governed her conduct,

14    deportment, and communication thus far.  Any objection by the

15    Government?

16           *MS. SPENCER:*  No.

17           *THE COURT:*  Or by the defense?

18           *MR. HUTT:*  No, Your Honor.

19           *THE COURT:*  Thank you.  We'll proceed on that basis.

20      (In open court:)

21           *THE COURT:*  Ms. MacLaughlin, back to you.  You,

22    indeed, are the alternate juror.  We didn't pick you out.  I

23    simply picked a seat number at random during our Trial

24    Preparation Conference which was conducted several days ago.

25    So I don't want you to be offended, insulted, or embarrassed by

 1   being selected as the alternate juror in this case.

 2          Now, I have several options under the law.  I've

 3   conferred with counsel.  I'm going to retain you as the

 4   alternate juror, but I'm not going to require you to remain

 5   sequestered here in the federal courthouse.

 6          Instead, momentarily, you'll be free to retrieve your

 7   belongings and leave the courthouse, and go your separate way

 8   but subject to those continuing rules, admonitions, and

 9   prohibitions that have governed your participation in this

10   trial from start to finish.  Do you understand that?

11          *THE JUROR:*  I do.

12          *THE COURT:*  Will you continue to abide by those rules,

13   admonitions, and prohibitions?

14          *THE JUROR:*  Yes.

15          *THE COURT:*  Thank you.

16          Now, before you leave, you must provide Ms. Roberson,

17   the courtroom deputy clerk, with the best and most reliable

18   means by which you may be contacted either to recall you to

19   active service or to discharge you from further duty and

20   service in this trial all together.  Will you do that?

21          *THE JUROR:*  Yes.

22          *THE COURT:*  Very well.  Being chaperoned by you,

23   Ms. Roberson, or the bailiff, Ms. MacLaughlin, you are excused

24   with our thanks.  The best of luck to you.

25          *THE JUROR:*  Thank you.

1        *THE COURT:*  You may retrieve your belongings from the

2    jury deliberation suite without interrupting the jury, of

3    course.  You may be excused for that purpose.

4        All rise pending the exit of our alternate juror.

5        (Juror left.)

6        *THE COURT:*  Again, thank you.  You may be seated.

7        Counsel, unless the verdict is sooner received, we

8    shall reconvene in open court this afternoon at 4:45 p.m.

9    Please remain within ten minutes of the courtroom, not the

10   courthouse, given the security that we have, and while out of

11   the courtroom please inform Ms. Roberson of your whereabouts

12   and, again, the best and most reliable means by which you may

13   be contacted to conduct further proceedings in the trial of

14   this important case.

15       Very well.  Pending further proceedings -- excuse me.

16       *MR. HUTT:*  I'm hoping that the Court will allow me to

17   make a request.

18       *THE COURT:*  Well, let me inquire, further business

19   generally by the Government?

20       *MS. SPENCER:*  No.  Thank you.

21       *THE COURT:*  Or on behalf of Mr. Shields.

22       *MR. HUTT:*  Thank you for inquiring.  We want to ask

23   the Court for our purposes for documenting how Mr. Shields has

24   been allowed to appear at trial, if we can take a photograph of

25   him in his civilian clothing.  That's my only request.

1      *THE COURT:*  May I inquire for what purpose?

2      *MR. HUTT:*  Something Mr. Beller and I like to do to

3  document our file and to make sure that we have a record and

4  also for Mr. Shields who, honestly, has some concern about his

5  appearance and what may happen when he returns to the Bureau of

6  Prisons.

7      *THE COURT:*  Well, does Mr. Shields have any objection

8  after discussing the matter with you?

9      *MR. HUTT:*  He does not, Your Honor.

10      *THE COURT:*  Does the Government?

11      *MS. SPENCER:*  No, Your Honor.

12      *THE COURT:*  I'll allow one photograph.

13      *MR. HUTT:*  Thank you, Your Honor.

14      *THE COURT:*  I don't want any other person to be seen

15  in the photograph.

16      *THE DEFENDANT:*  I suggest there's a small room here

17  with all white walls I can step into quickly for that purpose.

18      *THE COURT:*  You can, but counsel may not --

19      *THE DEFENDANT:*  The marshals, perhaps.

20      *THE COURT:*  -- ever.  It is the only room in the

21  courthouse to which I do not have access.  So if you could

22  simply stand where you are.  Ms. Roberson, if you'll get out of

23  the picture, please.  Say cheeseburger.

24      *MR. HUTT:*  Thank you very much, Your Honor.

25      *THE COURT:*  You're welcome.  Now, there being no

 1   further business at this time to come before the Court, we

 2   close the record.  Pending further proceedings, the Court is

 3   now in recess.

 4        Madam Clerk, please declare the recess of the Court.

 5        (Recess taken from 9:47 a.m. to 12:30 p.m.)

 6        *THE COURT:*  Good afternoon, and thank you.  Please be

 7   seated.

 8        Very well.  Momentarily, we proceed in open court on

 9   the record for now outside the presence and hearing of the

10   jury.

11        The Court has received a note from the foreperson of

12   the jury indicating that the jury has achieved a unanimous

13   verdict in the trial of this case.

14        Unless good cause is shown, the jury should be

15   escorted into the courtroom, and the Court provided with the

16   verdict.

17        I presume no objection by either party, and I discern

18   none.  Thank you.

19        Madam Clerk, please retrieve the jury, with my thanks.

20        (Pause in proceedings.)

21        *THE COURT:*  All rise for the jury, please.

22        (Jury in at 12:33 p.m.)

23        *THE COURT:*  Thank you, Madam Clerk.  Thank you,

24   Mr. Bailiff.

25        Ladies and gentlemen, please be seated.

1          Ladies and gentlemen, good afternoon.  The bailiff has

2     informed the Court that your foreperson has reported that the

3     jury has reached a unanimous verdict in the trial of this case.

4     Would the foreperson of the jury please stand and be

5     identified.  Mr. Mulligan?

6          *THE JUROR:*  Yes, sir.

7          *THE COURT:*  Are you the foreperson of this jury?

8          *THE JUROR:*  I am.

9          *THE COURT:*  Has this jury achieved a unanimous

10    verdict?

11         *THE JUROR:*  It has.

12         *THE COURT:*  As the foreperson, have you completed the

13    verdict form accordingly, dated, and then signed that form,

14    together with all other jurors?

15         *THE JUROR:*  We have.

16         *THE COURT:*  Very well.  I'll ask our bailiff to

17    retrieve from the foreperson --

18         *THE JUROR:*  The originals are there, too.

19         *THE COURT:*  Very well.  Thank you.

20         Very well.  Mr. Shields, would you and your co-counsel

21    please stand as the Court publishes the verdict of the jury.

22         Under the caption of this case in the paper entitled

23    "Verdict Form," it reads as follows, and I quote.

24         We, the jury, on our oaths, unanimously find defendant

25    Shawn Shields on the crime of possessing contraband in prison

1    as charged in Count 1 of the Indictment, the essential elements

2    of which are set forth in instruction No. 6:  Guilty.

3           Dated today's date and ostensibly signed by the

4    foreperson and all other members of the jury.

5           Ladies and gentlemen of the jury, momentarily you will

6    be -- you may be seated.  I'm sorry.

7           Momentarily, you will be discharged with the thanks of

8    this Court.  The question may arise, to what extent, if any, at

9    all and with whom may you discuss this case, the trial, the

10   parties, the evidence, and your service.  For your guidance, I

11   advise you as follows:

12          Under the local criminal rules of this United States

13   District Court, the defendant and the attorneys for both

14   parties are prohibited from discussing those matters with you.

15          However, on your part, you may say as much or as

16   little about one or more of those matters as you choose and

17   with whomever you choose.

18          Importantly, if someone persists in discussing the

19   case over your objection or becomes critical of your service in

20   this case as a juror, please report such a circumstance

21   directly to me so that I can follow up swiftly.

22          Very well.  Once you've surrendered those

23   all-important juror badges and key cards, you are excused and

24   relieved from further duty and service in the trial of this

25   case with our thanks.

1          Good luck to each and all of you.

2          Very well.  All rise pending the exit of these jurors.

3       (Jury out at 12:36 p.m.)

4          *THE COURT:*  Thank you.  Again, please be seated.

5          On the verdict of the jury, now as required by 18

6    U.S.C. Section 3552 and Federal Rules of Criminal Procedure

7    32(c) and (d), the probation department shall conduct a

8    presentence investigation and file a presentence report.

9          Very well.  If we have all parties in interest, let's

10   set this matter for sentencing.

11         Madam Clerk, if you have a proposed date, I will

12   consider it.  Otherwise, please access your calendars in

13   whatever form you have them, and we'll look for a sentencing

14   date approximately 12 weeks hence.

15         Please consider Wednesday, June 20, 2018, at 10:00

16   a.m. mountain daylight time.  June 20 at 10:00 a.m.  The

17   Government?

18         *MS. SPENCER:*  I'm on vacation that week, Your Honor.

19   I cannot make that.

20         *THE COURT:*  The following Wednesday, June 27, 2018,

21   also at 10:00 a.m.  The Government?

22         *MS. SPENCER:*  Yes.  Thank you, Your Honor.

23         *THE COURT:*  The defense?

24         *MR. HUTT:*  Yes, Your Honor.

25         *THE COURT:*  Very well.

1          *MR. BELLER:*  Your Honor, may I be heard?

2          *THE COURT:*  Yes, you may.

3          *MR. BELLER:*  I didn't speak to Mr. Hutt quickly

4     enough.  I will be on vacation that week, but if the Court

5     would allow me to be absent and Mr. Hutt handle it, that would

6     be acceptable to us.

7          *THE COURT:*  If it's acceptable to Mr. Hutt and

8     Mr. Shields.

9          *MR. BELLER:*  It is, Your Honor.

10         *THE COURT:*  That request is granted.

11         Having concurred with the parties and having their

12    concurrence, this matter is continued for sentencing hearing as

13    agreed to Wednesday, June 27, 2018, commencing at 10:00 a.m.

14    mountain daylight time, at which time Mr. Shields shall again

15    appear before this Court in this case without further notice or

16    order from the Court.

17         Provided, furthermore, that, to the extent necessary,

18    the United States Marshal for the District of Colorado shall

19    assist the Court in securing the appearance of the defendant.

20         The alternate juror, juror No. 9, Ms. Kacey

21    MacLaughlin, is now discharged and relieved from further duty

22    and service in this case.

23         Provided further that the courtroom deputy clerk is

24    authorized and directed to contact her as soon as practicable

25    to communicate her discharge by the Court.

1          I take this time on the record to commend publicly

2     those on my own staff who, once again, have ably assisted the

3     Court in the trial of this case.

4          I start with Mr. Roberson, my courtroom deputy clerk,

5     thank you.

6          I transition to my realtime court reporter, Mrs. Weir,

7     thank you.

8          Behind the scenes, Kathleen Finney, my judicial

9     assistant, and the law clerk assisting on this case is Hazel

10    Porter.

11         Very well.  Anything further before the Court gavels a

12    recess of these proceedings?  By the Government?

13             *MS. SPENCER:*  No.  Thank you.  Your Honor.

14             *THE COURT:*  By the defense?

15             *MR. HUTT:*  No, Your Honor.

16             *THE COURT:*  Very well.  Please close the record in

17    this case and trial.  The Court is in recess.

18             Madam Clerk.

19             (Court stood in recess at 12:41 p.m.)

20

21

22

23

24

25

1                                    **INDEX**

2    **Item**                                                        **Page**

3    CLOSING ARGUMENTS

4       By Ms. Spencer                                                351

5    VERDICT                                                          371

6                            * * * * *

7                      **REPORTER'S CERTIFICATE**

8        I certify that the foregoing is a correct transcript from

9    the record of proceedings in the above-entitled matter.  Dated

10   at Denver, Colorado, this 26th day of October, 2018.

11

12                                      *S/Tracy Weir*
                                        Tracy Weir
13

14

15

16

17

18

19

20

21

22

23

24

25