IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 15-CR-00200-REB

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

SHAWN SHIELDS,

    Defendant.

_____

**REPORTER'S TRANSCRIPT**
(Sentencing)

_____

       Proceedings before the HONORABLE ROBERT E. BLACKBURN,

Judge, United States District Court for the District of

Colorado, commencing at 2:56 p.m., on the 5th day of September,

2018, in Courtroom A1001, United States Courthouse, Denver,

Colorado.

Proceeding Recorded by Mechanical Stenography, Transcription
Produced via Computer by Tracy Weir, 901 19th Street,
Room A258, Denver, Colorado 80294, (303) 298-1207

**APPEARANCES**

      VALERIA SPENCER and CLAY COOK, Assistant U.S. Attorneys, 1801 California Street, Suite 1600, Denver, Colorado 80202, appearing for the plaintiff.

      ABRAHAM HUTT, Attorney at Law, Recht & Kornfeld, P.C., 1600 Stout Street, Suite 1400, Denver, Colorado 80202, appearing for the defendant.

      *   *   *   *   *

**PROCEEDINGS**

      (In open court at 2:56 p.m.)

      *THE COURT:*  Good afternoon, and thank you.  Please be seated.

      Thank you.  This is case 15-cr-00200, identified as United States of America versus Shawn Shields, defendant.

      The matter comes before the Court set for Sentencing Hearing.

      At this hearing, the Government appears by assistant United States attorneys, Valeria Spencer and Clay Cook.  Good afternoon.

      *MS. SPENCER:*  Good afternoon, Your Honor.

      *MR. COOK:*  Good afternoon, Your Honor.

      *THE COURT:*  The defendant, Shawn Shields, is present, together with his attorney, Abraham Hutt.  Good afternoon.

      *MR. HUTT:*  Good afternoon.

      *THE COURT:*  The architect of our presentence

1   investigation and author of our presentence report, Trisha

2   Skalmusky, is present from the probation department.  Good

3   afternoon.

4          MS. SKALMUSKY:  Good afternoon, Your Honor.

5          THE COURT:  Assuming that we are prepared to proceed

6   to sentencing as stated and understood by the Court, I first

7   find and conclude relevantly that as required both by federal

8   statute, rule of criminal procedure, the probation department

9   has conducted a presentence investigation and filed a

10  presentence investigation report, the final and operative

11  version of which is document 137, filed August 24, 2018.  Has

12  the Government received, read, and reviewed the presentence

13  report?

14         MR. COOK:  Yes, Your Honor.

15         THE COURT:  Are there any additions or corrections of

16  a material or substantive nature not now of record?

17         MR. COOK:  No, Your Honor.

18         THE COURT:  Thank you.  Mr. Hutt, a series of

19  questions.  Have you read the presentence report; to your

20  knowledge, has Mr. Shields read the presentence report; and

21  lastly, have you reviewed and discussed the presentence report

22  with him carefully and thoroughly?

23         MR. HUTT:  Yes to all of the above, Your Honor.

24         THE COURT:  Thank you.  Are there any additions or

25  corrections of a material or substantive nature not now of

1     record?

2            *MR. HUTT:*  Yes, Your Honor.  Small, but I think

3     material.  There is a reference in the pretrial report --

4     presentence report -- that is paragraph 66, Your Honor.

5            *THE COURT:*  56 or 66?

6            *MR. HUTT:*  66.

7            *THE COURT:*  66.

8            *MR. HUTT:*  It says, "Mr. Shields provided numerous

9     certificates from his time in custody."  This is true.  It says

10    he completed 24 adult continuing education courses and numerous

11    reentry courses.  The correct number is 58.  There are 58

12    certificates that Mr. Shields provided to the legal officer who

13    assisted with the telephone portion of the presentence

14    investigation, and he was assured that those -- all 58 of those

15    certificates had been transmitted to Ms. Skalmusky.  They

16    apparently were not just by virtue of the numbering here.

17           He brought them with him.  If the Court wishes to

18    review those, many are referenced in the materials that I

19    provided.  I didn't have the correct number, and I'm grateful

20    to Mr. Shields for having brought all of those.

21           So there are 58 certificates.

22           In addition to those 58 certificates of education

23    courses, he brought with him the paperwork regarding the

24    psychology, not classes, but programs, treatment programs, that

25    he has been through.  They are referenced in the presentence

1   investigation report briefly as well, but there is considerably

2   more detail in the documents that Mr. Shields has provided.

3         He again told me that those were, he should be

4   assured, had been sent, scanned, uploaded somehow to the

5   probation officer, but it seems as though in that detail they

6   were not.

7         I wanted to have the Court be able to take a look at

8   those as well.  There are 11 certificates in total.  They

9   include some comments by the treatment providers about the

10  level of his participation and the quality of his participation

11  that I think are positive and would be useful for the Court.

12  Those are the only things we find to be missing or needing of

13  correction for the presentence investigation report.

14        THE COURT:  Any objection by the Government to the

15  Court receiving and reviewing for the limited purpose of this

16  Sentencing Hearing those materials, including certificates and

17  other matters referenced by Mr. Hutt?

18        MR. COOK:  No, Your Honor.

19        THE COURT:  With the assistance of the courtroom

20  deputy clerk, I'll receive those matters at the bench.  I will

21  return them later in the hearing subsequent to my review.

22        MR. HUTT:  Thank you very much, Your Honor.  I've

23  interposed them so the ones on the top that are vertical are

24  the psychology ones and beneath those the education.

25        THE COURT:  Very well.  Thank you.

1          In addition to the presentence report, the following
2    papers are relevant to sentencing:
3          The Government's Sentencing Statement, document 123,
4    filed March 19, 2018.
5          Shawn Shields' Objections to Presentence Investigation
6    Report, document 130, filed June 6, 2018.
7          Government's Response to Defendant's Objections to the
8    Presentence Investigation Report, document 131, filed June 12,
9    2018.
10         Government's Supplemental Sentencing Statement,
11   document 139, filed August 27, 2018.
12         Lastly, Sentencing Statement of Shawn Shields,
13   document 141, filed August 29, 2018.
14         Counsel, to your knowledge, are there any other
15   sentencing-related documents to be considered by the Court?
16   The Government?
17         *MR. COOK:*  No, Your Honor.
18         *THE COURT:*  The defense?
19         *MR. HUTT:*  No, Your Honor.
20         *THE COURT:*  Thank you.
21         Mr. Hutt, I return to you to inquire, as I must.  Do
22   you wish to make a statement or presentation on behalf of
23   Mr. Shields, offer additional information in mitigation of
24   sentencing, comment further on the various determinations of
25   the probation department, and be heard on matters relating to

1    the appropriate sentence?

2              *MR. HUTT:*  Yes, Your Honor.

3              *THE COURT:*  And you may, of course.

4              *MR. HUTT:*  Thank you.

5              I can and will be brief, Your Honor.  When I was

6    contacted by the CJA coordinator and asked to take Mr. Shields'

7    case, you know, you get a very small amount of information, but

8    it's significant.  Reading it, I was seriously disinclined to

9    take the case because what they told me was this is a guy who's

10   been in prison for decades, is in the Aryan Brotherhood,

11   serving time for a prison murder, and you'll be the third

12   lawyer of the guy's.

13             My thought, well -- and, by the way, I heard the names

14   of the two lawyers who had represented him previously,

15   including Bob Pepin who I know the Court is familiar with who

16   I've known for many years who I know to be a zealous advocate

17   and a very good lawyer.

18             I thought, there's nothing about this that sounds to

19   me like it's going to be a good idea.

20             Before I got back to Mr. Griffard, I contacted ADX and

21   asked to speak to Mr. Shields' counselor and said, I'm just

22   curious what you have to say about this guy, waiting to hear

23   about what a horrible person he was and that he was dangerous

24   and that there was no good reason for me to take the case.

25             Frankly, I first thought they were talking about

1   somebody else because the counselor said, We have no problem.

2   Of course, I knew what he was charged with.  No.  I've got

3   issues with lots of people but not with him.  I thought this

4   was weird and incongruous.

5          Honestly, it was that part of me that says I call

6   myself a criminal defense lawyer and there's supposed to be

7   honor in my profession of, you know, we will take anyone.

8   Everyone deserves a person to stand up for them in court.

9          I say that to you, Your Honor, because when I tell my

10  friends the story about this case, the most extraordinary thing

11  to me is who I have found Shawn Shields to be.  That's not

12  anything that you are ever in a position to know.  I think I'm

13  the only person that can really say this to you because

14  everybody else meets him by virtue of the evidence of the

15  documents and his record, which is horrible.

16         Then I spend time with this guy, and I will tell you

17  if every client of mine was as honest and grateful and kind and

18  thoughtful to me and my staff as Shawn Shields, my life would

19  be a dream, my professional life would be a dream.

20         I come into contact with lots and lots of people in

21  this system, in this criminal justice system.  I can say that

22  not only about the people that I represent but about the

23  people, but when I compare those qualities in Mr. Shields to

24  all of the people that I've run into in the system, if I could

25  come away from every case saying everyone I encountered in that

1    way was kind, grateful, intelligent, compassionate, and honest,

2    how much better a system would it be.

3           I don't think anyone would look at him on paper and

4    think that any one of those things was true about him.  I'm

5    just telling you, Your Honor, every single one of them is in a

6    way that is just such an incredible disconnect to everything

7    else in his record that the Court just needs to know that.

8           I ask the Court to accept my word about that and to

9    say to Your Honor, you know, I don't say that -- I don't say

10   any of those things lightly.  It's just the most extraordinary

11   thing that there has been to me about this case.

12          You know, the presentence report takes a lot of time

13   and it takes a lot of time to discuss his record, and the

14   documents filed by the Government take a lot of time to talk

15   about his record and the facts of cases that he has been

16   sentenced for.  I get it.  I understand.  He has been sentenced

17   for those crimes.  He is serving time for those crimes.

18          I ask the Court to take particular note of the dates

19   on those psychology programs and education programs that

20   Mr. Shields has provided because the vast majority -- I think

21   all of the psychology treatment, all of that stuff, that

22   particular packet, has been done since the date of offense.

23   The comments, some of which were quoted to you in the

24   presentence investigation report, about his participation

25   absolutely jibe with the person I have spent time with during

1   the course of doing this case.

2          There is insight, there is intelligence, there is a

3   willingness to work hard and participate that simply does not

4   belie what you believe about this person if all you paid

5   attention to is his criminal history.

6          I expect that has everything to do with, as I said in

7   the statement that we provided to the Court, this man went to

8   prison as a 19-year-old with bipolar disorder.  It probably

9   ought not be a surprise to any of us the kinds of things that

10  one has to do in prison to survive and that he became a tough

11  guy.  Nonetheless managing to preserve his humanity.  I, quite

12  frankly, think that is miraculous.

13         I think it is an indication to the Court of an ability

14  and willingness on Mr. Shields' part to take advantage of

15  whatever opportunity he's given.

16         If he manages to survive the lengthy sentences he's

17  serving that the Court must add to, all of what he has done --

18  this is a guy who has every reason to throw his hands up and

19  not do anything.  He's done the opposite.

20         So I ask the Court to consider that in fashioning the

21  appropriate sentence and to accept the recommendations that

22  we've made.

23         *THE COURT:*  Counsel, thank you.

24         Mr. Shields, good afternoon.  Before I impose any

25  sentence on you this afternoon, you first have the legal right

1    and opportunity now, right now, if you choose, to make your own

2    statement to this Court and to offer any additional information

3    in mitigation, lessening of your punishment that you may have.

4    Do you wish to make any such statement or offer any such

5    additional information in mitigation?

6            *THE DEFENDANT:*  Yes.

7            *THE COURT:*  And you may.  Would you and your attorney

8    please report to the podium, please.

9            Mr. Shields, before I receive your anticipated

10   statement, please, to the extent that you can, raise your right

11   hand to be sworn by the Court.  Thank you.

12           (Defendant sworn.)

13           *THE DEFENDANT:*  Yes, Your Honor.

14           *THE COURT:*  Mr. Shields, now under oath, please, what

15   is it you would tell the Court?

16           *THE DEFENDANT:*  Thank you, Your Honor.

17           *THE COURT:*  You're welcome.

18           *THE DEFENDANT:*  I would like to address the Court and

19   state today.  I understand the rule of law and what its purpose

20   is in society.  I live in an environment where those rules and

21   laws don't really apply anymore because of the situation we

22   find ourselves in where people with nothing to lose simply can

23   choose to ignore them; whereas, somebody who has something to

24   lose and possibility of getting out must follow them to get

25   out.

1    I don't make any excuses for the crimes I have

2  committed and what I've done.  I take responsibility for my

3  roles.  In this case, I sought to go to trial for an element of

4  the law that I believe needed to be put forth in a case like

5  this because this is an epidemic, so to speak, where certain

6  people are charged with crimes and others are allowed to freely

7  go and suffer no consequences.

8    So I felt I needed to stand up and at least make an

9  attempt to bring forth the light of what really goes on in

10  prison and the kind of bias that prosecutors use to sanction

11  some but not others.

12    With that said, I regret the things I've done because

13  it's hurt my family as well as myself, and, you know, I'm

14  working to try to get out of prison by doing what I can to

15  learn more about the laws, and I've succeeded in getting back

16  into court a few times and, hopefully, one day maybe I can get

17  back out again and lead a productive life.

18    I just wanted to take this opportunity to state that,

19  you know, I am trying and I do my best in the situations I find

20  myself in.  Lately, I've been putting a lot of energy and focus

21  into programs they're offering us.  I hope it wasn't for

22  nothing.  That's about all I have.  Thank you, Your Honor.

23    *THE COURT:*  You're welcome.  Again, gentlemen, you may

24  be seated.

25    *MR. HUTT:*  Thank you, Your Honor.

1           *THE COURT:*  You're welcome.

2           Counsel, does the Government wish to be heard on

3    matters relating to the appropriate sentence?

4           *MR. COOK:*  Briefly, Your Honor.

5           *THE COURT:*  And you may, of course.

6           *MR. COOK:*  Your Honor, I don't want to belabor the

7    points that remain in the Government's sentencing briefing, but

8    just to make a few quick points.

9           I think it's very commendable and laudable that

10   Mr. Shields has participated in 58 educational programming,

11   psychology programming, and various other reentry programming,

12   but I think it pales in comparison to the violent criminal

13   history he has.

14          What is most extensive about that is the fact that the

15   majority of the criminal history he has has occurred in prison.

16   He's been incarcerated a number of years.  A lot of those

17   felony offenses, almost 12, have occurred while he's been in

18   prison for weapon possession, savagely beating an inmate,

19   murdering a inmate.  Just the tip of the iceberg.

20          To be clear, the extensive environment of a prison

21   exist because of inmates like Mr. Shields who take the law into

22   his own hands, who have weapons, takes actions against inmates

23   he doesn't care for or wants to silence.  That's the reason a

24   great majority of the prisons are violent.

25          I think another point to be made is not only specific

1   deterrence against Mr. Shields who has had numerous felony

2   convictions while in prison, numerous sentences imposed, but

3   also a general deterrence of other inmates at the Florence

4   Correctional Complex, the nearly 2500 inmates, that may be so

5   inclined to possess a weapon as well.  Whether or not they use

6   it, the simple possession of the weapon is also dangerous for

7   the prison environment, as the possession of the weapon is the

8   genesis for further use of the weapon.

9        That general deterrence factor is also very important

10  for the community, keep the community safe, the prison complex,

11  not only other inmates but the staffers who work there.

12       Also, I think Mr. Hutt referred to him as a tough guy,

13  but I don't think it's a tough guy when he takes the law into

14  his own hands and does something outside of the law.  He had

15  choices to make in this case, as in the other cases.  He chose

16  to break the law, and he should be held accountable for that.

17  That's why the Government is seeking a 41-month consecutive

18  sentence in this case.  Thank you, Your Honor.

19       *THE COURT:*  Thank you.  Please indulge me while I

20  review the materials that have been submitted on behalf of

21  Mr. Shields at the outset of this Sentencing Hearing.

22       (Pause in proceedings.)

23       *THE COURT:*  Madam Clerk, your assistance in returning

24  these to Mr. Hutt.

25       Mr. Shields, what is *Shark Week*?  I understood

1    everything else but *shark week*?

2          *THE DEFENDANT:*   It was a program based on the

3    Discovery Channel series.  They showed you videos and asked you

4    questions about what the scientists were doing and what the

5    specific name of a particular shark was.

6          *THE COURT:*   Thank you.

7          Very well.  Based on this record considered as a

8    whole, I make the following sentencing statement under 18

9    U.S.C. Section 3553(c).  After careful consideration of all

10   relevant matters of fact and law, including the facts

11   presented, arguments advanced, authorities cited, and reasons

12   stated in the sentencing-related papers, all viewed through the

13   unique prism which is the federal sentencing statute, I now

14   enter essentially the following findings of fact, conclusions

15   of law, judgment of conviction, sentence, and orders,

16   commencing with my findings and conclusions.

17         Here, after trial by jury, the defendant was found

18   guilty on February 22, 2018, as charged in Count 1 of the

19   operative Indictment, possessing contraband in prison,

20   violative of 18 U.S.C. Section 1791(a)(2), (b)(3), and

21   (d)(1)(B), a class D felony.

22         The defendant has filed objections to the presentence

23   report.

24         His objections are stated in Shawn Shields' Objections

25   to Presentence Investigation Report, document 130.  In turn,

1   each objection is addressed by the Government in Government's

2   Response to Defendant's Objections to the Presentence

3   Investigation Report, document 131.

4         I essentially approve, adopt, and incorporate the

5   facts presented, reasons stated, and arguments advanced and

6   authorities cited by the Government in its response to those

7   objections but supplement the record as follows:

8         Concerning the criticism of Mr. Shields concerning the

9   description of the offense conduct, I have presided in this

10   case since its inception from the return of the Indictment

11   through today, and I find no unreasonable or significant error

12   or omission in the description of the offense conduct in the

13   presentence report.  Therefore, I overrule that objection.

14         Concerning the objection of Mr. Shields to

15   descriptions of the crimes that comprise his extensive criminal

16   history, notwithstanding the objections, the defendant fails

17   actually to provide any factual basis to oppose or object to

18   those descriptions and, therefore, on that basis I also

19   overrule his objection to his claim of an inadequate or

20   incomplete description.

21         His objection concerning acceptance of responsibility.

22   It is true that under Guideline Section 3E1.1(a) and the

23   application notes, particularly 1, that even though he

24   proceeded to trial, he is not by definition foreclosed from a

25   two-level decrease in the offense level from acceptance of

1    responsibility.

2           But for all of the reasons cited by the Government, he

3    simply is not entitled to claim acceptance of responsibility.

4    And, oh, by the way, during pretrial hearings, during the

5    defendant's Motion to Suppress, the defendant testified under

6    oath, and he made no claim of necessity for duress or choice of

7    evils.

8           In fact, it was his claim that the investigation

9    should never have been started because there was insufficient

10   evidence of any problems or issues between him and any other

11   inmate.  Then we go to trial and theory and the defense changes

12   dramatically.

13          For all of those reasons, I overrule the objections to

14   not being accorded relief for acceptance of responsibility.

15          Now, concerning double count as a matter of law, and

16   the Tenth Circuit deals with this periodically, the formulation

17   of an offense level and the formulation of a criminal history

18   category, even though it relies on overlapping information, is

19   insufficient to constitute double counting in violation of the

20   constitutional right to due process by the defendant.

21          Here, there is no double counting.  Therefore, the

22   objection on that basis is also overruled.

23          Finally, the objection to the imposition of a

24   consecutive sentence simply flies in the face of a statute.  A

25   conviction of the crime charged in this case not only warrants

1   but mandates that the sentence be imposed consecutively to any

2   previously imposed sentence whether in state or federal court.

3   Thus, that objection is, likewise, overruled.

4            Now, having resolved the objections of the defendant

5   against him, I now exercise my discretion to accept the

6   presentence report, including its application, calculations,

7   and guideline determinations as an integral part of my findings

8   of fact.

9            The November 2016 edition of the United States

10  Sentencing Commission Guidelines Manual applies.  Thus, I have

11  used that collection of advisory guidelines as the starting

12  point and initial benchmark for my own sentencing analysis.

13  Although once again I have given respectful consideration to

14  those advisory guidelines, once again, I have not presumed the

15  resulting advisory sentencing guideline ranges to be reasonable

16  per se; that is, in and of themselves.

17           Here, consideration, identification, and application

18  of all relevant provisions of those advisory guidelines to this

19  offense, this offender, and all relevant conduct produces a

20  total adjusted advisory offense level of 13 and an advisory

21  criminal history category of VI, the highest based on the

22  imposition of not less than 23 criminal history points.

23           In turn, the advisory sentencing guideline ranges are

24  as follows:

25           Imprisonment, 33 to 41 months.

1        Supervised release, one to three years.

2        And fines ranging from $3,000 to $30,000.

3        Here, there is no request or reason to depart from the

4   advisory sentencing guideline range, and there is no reason or

5   request to vary from the advisory guideline range.  The issue

6   is where within the advisory guideline range to sentence

7   Mr. Shields.

8        For that, I do my due diligence under 18 U.S.C.

9   Section 3553(a)(1) through (7).  I first consider the nature

10  and circumstances of the offense focusing on its real conduct.

11  Here, the offense is adequately and reasonably described in the

12  presentence report under offense conduct on page 3.  This was a

13  serious offense committed by a serious offender in, of all

14  place, the most secure prison certainly in this country.

15       When I consider the history and characteristics of

16  Mr. Shields, of course, I rely on the presentence report.  I

17  begin on page 2 with identifying data.  I learn more about him

18  from part B, the defendant's criminal history, which, of

19  course, is extensive and it's aggravated.

20       Finally, I learn more about him in part C from

21  offender characteristics.  All of that is supplemented by the

22  Government's sentencing statement, Mr. Shields' sentencing

23  statement, and the remarks and observations of his counsel,

24  Mr. Hutt, during this Sentencing Hearing.

25       I think I've known Mr. Shields since roughly 2005 in

1  which he was involved in a trial in this courtroom in a wholly

2  unrelated matter.  And there really are two Mr. Shields.

3  There's the Mr. Shields on paper, a guy you wouldn't want to

4  meet in the light or in the dark without significant

5  assistance, and the Mr. Shields that's in my court

6  periodically.  He's polite.  He's courteous.  He's respectful.

7  He's thoughtful.  He's articulate.  There is that schism

8  between the two Mr. Shields.

9          What's important here are the needs that are expressed

10  by the sentencing statute.  Again, a serious offense committed

11  by a serious offender.  Mr. Shields' crime, like all of its

12  ilk, threatens the stability, the safety, and security of

13  inmates and staff alike in the prison in which he was confined.

14  Inmates simply have no right or business possessing, let alone

15  using, contraband consisting of deadly weapon; in this case

16  deadly weapons.

17          So the nature and circumstances of the crime and the

18  history and characteristics of Mr. Shields underscore the need

19  for the sentence to reflect the seriousness of the offense, to

20  promote, not undermine, respect for the law, to provide

21  punishment that is just, to afford adequate deterrence both to

22  Mr. Shields and to others who may be similarly situated or

23  inclined, to protect the public and, in this case, other

24  inmates from further crimes of Mr. Shields; frankly, which

25  crimes are predictable and predicted.

1          At that point, only a top of the guideline sentence

2    will address and satisfy those important needs as expressed in

3    the sentencing statute.

4          Here, there's a mitigating factor, and that is the

5    substantial post-offense rehabilitation taken by Mr. Shields.

6    Now, the guidelines adequately address that, but because of

7    that, I conclude that Mr. Shields should be sentenced as

8    recommended by the probation department not to the top of the

9    guidelines but, instead, to a sentence of 37 months.  I find

10   that to be the sentence sufficient, but not greater than

11   necessary, to preserve, protect, and vindicate the important

12   purposes and needs of the federal sentencing statute.

13         Now, by statute this sentence must be served and

14   imposed consecutively.  That would be the result of my

15   independent analysis under the provisions of 18 U.S.C. Section

16   3584(a) and (b) and 3553(a)(1) through (7).

17         Now, obviously, Mr. Shields is financially unable to

18   pay a fine.  Therefore, no fine will be imposed.

19         Concerning the proposed conditions of supervised

20   release, those appear in the sentencing recommendation,

21   document 137-1, and they appear on pages R-1 and R-2.  There

22   are two special conditions recommended, temporary residence in

23   an RRC, a residential reentry center, for a period of up to six

24   months on the release of Mr. Shields from custody, obviously,

25   to assist his transition from prison to civilian life, and a

 1 | search condition.

 2 | Mr. Hutt, I inquire of you.  Does Mr. Shields object

 3 | to either of those special conditions in his circumstances?

 4 | *MR. HUTT:*  May I have just a moment, Your Honor?

 5 | *THE COURT:*  You may.  Thank you.

 6 | (Pause in proceedings.)

 7 | *MR. HUTT:*  Your Honor, Mr. Shields asked for the

 8 | record that we interpose an objection to both of those.

 9 | *THE COURT:*  You object to both of them?

10 | *MR. HUTT:*  Yes.

11 | *THE COURT:*  All right.  As to both of these proposed

12 | special conditions of supervised release, I consider them under

13 | 18 U.S.C. Section 3583(c) and (d) both as codified and

14 | construed and under Section 5D1.3.  Thus, as required by

15 | Section 3583(c), I have considered carefully the factors to be

16 | considered under 18 U.S.C. Section 3553(a)(1), (a)(2)(B)

17 | through (D), and (a)(4) through (7).

18 | As required by Section 3583(d) and Guideline Section

19 | 5D1.3(b), I find and conclude that each proposed and

20 | recommended special condition of supervision, one, is

21 | reasonably related to the nature and circumstance of this

22 | offense and the history and characteristics of the offender;

23 | two, the need for a condition of supervised release to afford

24 | adequate deterrence, protect the public, and provide the

25 | defendant with needed educational or vocational training in the

1    most effective manner.  Neither proposed special condition

2    involves any greater deprivation of liberty than is reasonably

3    necessary to those foregoing statutory purposes, and each is

4    consistent with the concomitant pertinent policy statements

5    issued by the Sentencing Commission.  Thus, the objections of

6    Mr. Shields are overruled, and those two conditions of

7    supervision will be required and imposed.

8              Therefore, it is ordered as follows:

9              That judgment of conviction shall now enter on Count 1

10   of the operative Indictment.

11             That it is the judgment and sentence of this Court

12   that the defendant, Shawn Shields, be committed to the Bureau

13   of Prisons to be incarcerated for a term of 37 months to be

14   imposed and served consecutively to any previously imposed

15   sentence in state or federal court.

16             That on release from incarceration, Mr. Shields shall

17   be placed on supervised release for a term of three years.

18             That within 72 hours of his release from the custody

19   of the Bureau of Prisons, he shall report in person to the

20   United States probation department and office within the

21   federal district in which he is released.

22             That while on supervised release, Mr. Shields shall

23   comply with the mandatory, standard, and special conditions of

24   supervision identified in the sentencing recommendation,

25   document 137-1 on pages R-1 and R-2.

1              That no fine is imposed.

2              That Mr. Shields shall pay forthwith a special

3     victim's fund assessment of $100.

4              That presentence confinement shall be determined, as

5     it must under federal law, by the Bureau of Prisons, not by

6     this Court.

7              Finally, that Mr. Shields is remanded to the custody

8     of the United States Marshal for a handoff to the Bureau of

9     Prisons for the execution of this consecutive sentence.

10             Mr. Shields, please be advised that you have the right

11    to appeal to a higher court both your conviction and sentence

12    in this matter.  If you wish to appeal, please understand and

13    know that your notice of appeal must be filed with the clerk of

14    this district court, not the Court of Appeals, within 14 days

15    of the entry of formal and final judgment, which will not

16    happen today, or your right of appeal will be lost, forfeited.

17             If you are unable to pay the costs of an appeal, you

18    have the right to request permission to appeal as a poor

19    person, or as we say in forma pauperis.

20             You have the right to be represented during any such

21    appeal by an attorney.  If you want one but cannot retain one,

22    the Court will appoint appellate legal counsel for you

23    appropriately at the expense of the Government.

24             Finally, at your request, the clerk of the court shall

25    prepare and file immediately on the entry of final judgment a

1    notice of appeal on your behalf.

2            Do you understand those additional appellate legal

3    rights that you now have in your circumstances?

4            *THE DEFENDANT:*  Yes, Your Honor.

5            *THE COURT:*  Further business to come before the Court

6    in this matter by the Government?

7            *MR. COOK:*  No, Your Honor.  Thank you.

8            *THE COURT:*  You're welcome.  Or by the defense?

9            *MR. HUTT:*  No, sir.

10           *THE COURT:*  A special thanks to these deputy United

11   States Marshals and the security detail from the Bureau of

12   Prisons, Ad Max.  Thank you.

13           Please close the record in this case.  The Court is in

14   recess and will commence its 3:30 p.m. docket as soon as

15   practicable.

16           Madam Clerk.

17           (Court stood in recess at 3:49 p.m.)

18                         * * * * *

19                    **REPORTER'S CERTIFICATE**

20       I certify that the foregoing is a correct transcript from

21   the record of proceedings in the above-entitled matter.  Dated

22   at Denver, Colorado, this 2nd day of November, 2018.

23

24                                  *S/Tracy Weir*
                                    Tracy Weir
25